# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
JUDICIAL WATCH, INC.,           )
                                )
               Plaintiff,       )
                                )
        v.                      )        Civil Action No. 15-1740 (RBW)
                                )
NATIONAL ARCHIVES AND           )
RECORDS ADMINISTRATION,         )
                                )
               Defendant.       )
_____)
```

## MEMORANDUM OPINION

The plaintiff, Judicial Watch, Inc., filed this civil case, alleging that the defendant, the

National Archives and Records Administration ("Archives"), violated the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 (2012), by improperly withholding records subject to

disclosure under the FOIA. Complaint ("Compl.") ¶¶ 10-12. Currently before the Court are the

Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 10, and the Plaintiff's

Cross-Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 13. After carefully considering

all of the relevant submissions by the parties, the Court concludes for the following reasons that

it must grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion

for summary judgment.[1]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement Under LCvR 7(h)(1) ("Def.'s Facts"); (3) the Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute and Statement of Undisputed Material Facts in Support of Cross-motion for Summary Judgment ("Pl.'s Facts"); (5) the Defendant's Combined Reply in Support of its Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Resp."); and (6) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply").

## I.   BACKGROUND

In January 1994, Robert B. Fiske, Jr. was appointed as independent counsel by United States Attorney General Janet Reno, "to investigate allegations of criminal activity in connection with a defunct Arkansas thrift institution, the Madison Guaranty Savings & Loan Association ("Madison Guaranty")." Pl.'s Facts ¶ 1. Among other matters, the independent counsel was tasked with investigating Hillary Clinton's involvement with Madison Guaranty, as well as an Arkansas real estate venture named "Whitewater Development Company, Inc.," and an investment company named "Capital Management Services." Id. ¶ 4. In August of 1994, Kenneth Starr replaced Mr. Fiske as independent counsel. Id. ¶ 6. Five reports detailing the investigation were ultimately prepared by the independent counsel, id. ¶ 7, and are currently publicly available on the United States Government Publishing Office's website, id. ¶ 9. Included in the reports is information gathered from numerous sources, including but not limited to, interviews, deposition testimony, grand jury testimony from twenty-one witnesses, and interrogatory responses. Id. ¶¶ 23-25.

Specifically, one of the reports describes Mrs. Clinton's legal representation of Madison Guaranty regarding "numerous criminal and other fraudulent acts" between April 1985 and July 1986. Id. ¶¶ 10-13. During the course of the independent counsel's investigation, Mrs. Clinton "made numerous statements and gave sworn testimony regarding her representation of Madison Guaranty," id. ¶ 20, and the independent counsel investigated whether Mrs. Clinton "had committed perjury, made false statements, or obstructed justice during those investigations," id. ¶ 21, ultimately concluding that "there was insufficient evidence to prove beyond a reasonable doubt that Mrs. Clinton had committed any federal criminal offense," id. ¶ 22. Upon termination of the investigation by the independent counsel, federal law mandates that custody of the records

compiled by the independent counsel be transferred to the Archives, see 28 U.S.C. § 594(k)(1)

(2000), which now maintains custody of the records of the "independent counsels who served

under Title VI of the Ethics in Government Act of 1978," Def.'s Facts ¶ 1, ECF No. 10-4.

Included in the records are "drafts of a proposed indictment of Hillary Rodham Clinton." Id. ¶ 4.

By letter dated March 9, 2015, the plaintiff submitted a request to the Archives under the

FOIA for the following records:

> All versions of indictments against Hillary Rodham Clinton, including, but not
> limited to, Versions 1, 2, and 3 in box 2250 of the Hickman Ewing[2] Attorney
> Files, the "HRC/_Draft Indictment" in box 2256 of the Hickman Ewing Attorney
> Files, as well as any [and] all versions written by Deputy Independent Counsel
> Hickman Ewing, Jr. prior to September of 1996.

Id. ¶ 8. The Archives "responded to [the] plaintiff's request by locating the two boxes of records

of Mr. Starr and his successors," both which contain drafts of proposed indictments of Mrs.

Clinton, but no other responsive documents. Def.'s Mem. at 3. By letter dated March 19, 2015,

the Archives advised the plaintiff that it "ha[d] examined the folders from Hickman Ewing's

attorney files that [the plaintiff] requested" and was withholding the folders entitled "Draft

Indictment" from box 2250 and "Hillary Rodham Clinton/Webster L. Hubbell Draft Indictment"

from box 2256 in full pursuant to Exemption (7)(C). Def.'s Mot., Exhibit ("Ex.") C at 1.

By letter dated May 14, 2015, the plaintiff appealed administratively the withholding of

the above referenced records, see Compl. ¶ 7, and on October 20, 2015, the plaintiff commenced

this action, requesting that the Court compel the Archives to comply with the FOIA and refrain

from unlawfully withholding documents responsive to its FOIA request, see id. ¶ 11. The

defendant now moves for summary judgment, asserting that it is entitled to judgment as a matter

of law because the drafts of the proposed indictments are protected from disclosure under several

---

[2] Hickman Ewing was a lawyer who worked as Kenneth Starr's deputy in Little Rock, Arkansas. Def.'s Facts ¶ 9.

FOIA exemptions and Rule (6)(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)").
Def.'s Mem. at 1.  In addition to opposing the defendant's motion for summary judgment, the
plaintiff also cross moves for summary judgment, arguing that the defendant has not satisfied its
burden of proving that FOIA exemptions are applicable to the withheld responsive documents
and that Rule 6(e) does not apply to the Archives.  Pl.'s Opp'n at 1, 9.

## II.   STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is
no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the Court must
view the evidence in the light most favorable to the non-moving party.  Holcomb v. Powell, 433
F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150
(2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's
favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or
denials." Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at
248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue
of fact." Pub. Citizen Health Research Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C.
Cir. 1999) (alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120,
126-27 (D.C. Cir. 1980)).  If the Court concludes that "the nonmoving party has failed to make a
sufficient showing on an essential element of [its] case with respect to which [it] has the burden
of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  However, at bottom, "in ruling on cross-motions for summary judgment,
the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to

judgment as a matter of law upon material facts that are not genuinely disputed." <u>Shays v. Fed. Election Comm'n</u>, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citation omitted).

FOIA cases are typically resolved on motions for summary judgment. <u>Ortiz v. U.S. Dep't of Justice</u>, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); <u>Defenders of Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." <u>Students Against Genocide v. Dep't of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted). In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents [requested by the FOIA requester] are exempt from disclosure." <u>Boyd v. Dep't of Justice</u>, 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted). The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." <u>Friends of Blackwater v. Dep't of Interior</u>, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting <u>Greenberg v. U.S. Dep't of Treasury</u>, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" <u>Students Against Genocide</u>, 257 F.3d at 833 (quoting <u>Goland v. Cent. Intelligence Agency</u>, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III.   ANALYSIS

The issue before the Court in this case is whether the defendant properly withheld the draft indictments pursuant to Exemptions 3, 6 and 7(C) of the FOIA and Rule 6(e). Congress

amended the FOIA resulting in its current content in 1966, with the objective of promoting "full

agency disclosure."  See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489

U.S. 749, 754 (1989).  When an agency receives a request for records that reasonably describe

such records, the agency must make those records available to the requester. See id. at 754-55.

While there are nine expressly delineated exemptions from compelled disclosure, the dominant

objective of the act is disclosure, not secrecy.  See Dep't of Air Force v. Rose, 425 U.S. 352,

360-61 (1976).  The Supreme Court has explained this basic purpose as providing a way for

citizens to "know what their government is up to."  See Reporters Comm., 489 U.S. at 773.

Thus, courts should narrowly construe the statutory exemptions when determining if records

requested under the FOIA should be disclosed.  See Rose, 425 U.S. at 361.[3]

## A. FOIA Exemptions

### 1. Exemption 3

Exemption 3 of the FOIA excludes from compelled disclosure matters that are

"specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).  A statute satisfies

Exemption 3 only if it "requires that the matters be withheld from the public in such a manner as

to leave no discretion on the issue," or "establishes particular criteria for withholding or refers to

particular types of matters to be withheld."  Id.  The plaintiff does not dispute that Rule 6(e),

which prohibits disclosure of "matter[s] occurring before the grand jury," Fed. R. Crim. P. 6(e),

is considered a "statute" for purposes of Exemption 3.  Pl.'s Opp'n at 9; see also Fund for Const.

Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 867-68 (1981).  Instead, the plaintiff

---

[3] The plaintiff does not contest that the Archives satisfied the search requirements under the FOIA. Upon initially receiving a FOIA request, an agency must conduct an adequate search for responsive documents and can satisfy the threshold by "demonstrat[ing] beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  See Boyd v. Exec. Office for U.S. Attorneys, 87 F. Supp. 3d 58, 70 (D.D.C. 2015) (citing cases).  The FOIA request in this case specifically requested "[a]ll versions of indictments against Hillary Rodham Clinton," and the draft indictments that were discovered are the subjects of this case. Compl. ¶ 5.  Thus, the Court need not further discuss the adequacy of the search conducted by the Archives.

asserts that Rule 6(e) does not in itself apply to the Archives, nor is it applicable to the drafts of the proposed indictments because they do not fall within the purview of matters occurring before the grand jury and because the information in the drafts is sufficiently public to warrant disclosure. The Court will address each of the plaintiff's arguments in turn.

### a. The Applicability of Rule 6(e)

Rule 6(e) specifies seven categories of persons that are bound by the Rule's secrecy provision and expressly provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Fed. R. Crim. P. 6(e)(2)(A). The seven categories of persons who "must not disclose a matter occurring before the grand jury" are: (i) a grand juror, (ii) an interpreter, (iii) a court reporter, (iv) an operator of a recording device, (v) a person who transcribes recorded testimony, (vi) an attorney for the government, or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii). Fed. R. Crim. P. 6(e)(2)(B). The plaintiff contends that because the Archives is not explicitly included in the delineated list, Rule 6(e) secrecy "does not apply to the Archives." Pl.'s Opp'n. at 9. The Court, however, is unpersuaded.

The District of Columbia Circuit has held that an independent counsel is an attorney for the government, which is one of the seven categories, and thus, "is covered by Rule 6(e) and its bonds of secrecy." In re North, 16 F.3d 1234, 1244 (D.C. Cir. 1994). Upon termination of the Office of Independent Counsel, the active independent counsel was obligated to transfer all records which had been created during its tenure to the Archivist of the United States ("Archivist"), 28 U.S.C. § 594(k)(1), and was to "clearly identify which of [those] records [were] subject to rule 6(e)," In re North, 16 F.3d at 1244 (quoting 28 U.S.C. § 594(k)(1)). Furthermore, the Archivist is "responsible for the custody, use, and withdrawal of records transferred to him."

44 U.S.C. § 2108 (2012).  A FOIA analysis of whether to disclose records that have been

transferred to the Archives is conducted as if the records remain in the possession of the agency

that created them.  See Cause of Action v. Nat'l Archives & Records Admin., 753 F.3d 210, 216

(D.C. Cir. 2014) (holding that transfer of possession to the Archives did not affect the

document's status under the FOIA because the Court was "confident that Congress did not intend

to expose . . . material to FOIA simply because the material ha[d] been deposited with the

Archives"); see also Fund for Const. Gov't, 656 F.2d at 870 (allowing the withholding of the

documents at issue even when custody of the documents had been transferred to the Archives).

By its own language, the statute governing the Archives provides that the statutory restrictions

applicable to an agency also transfer with the records being transferred to the Archives.  See 44

U.S.C. § 2108 ("When records, the use of which is subject to statutory limitations and

restrictions, are so transferred, permissive and restrictive statutory provisions with respect to the

examination and use of records applicable to the head of the agency from which the records were

transferred or to employees of that agency are applicable to the Archivist and to the employees of

the National Archives and Records Administration, respectively.").

   Because Rule 6(e) applies to the independent counsel, see In re North, 16 F.3d at 1244,

and the restrictive statutory provisions that apply to the independent counsel also apply to the

Archivist under the express language of 44 U.S.C. § 2108, the Court finds that Rule 6(e) also

applies to the Archives.  Prior to the transfer of the draft indictments to the Archives, Rule 6(e)

shielded the documents from potential disclosure because the rule extended to the independent

counsel as an attorney for the government.  And, just as in Cause of Action v. National Archives

& Records Administration, 753 F.3d at 216, where the transfer of documents to the Archives did

not affect their FOIA status, the fact that the draft indictments were transferred to the Archives

does not alter the Archives' aptitude to protect the draft indictments from potential disclosure under Rule 6(e). Therefore, the Court finds that Rule 6(e) applies to the Archives.

### b.  The Protections Provided by Rule 6(e)

The defendant contends that the drafts of the proposed indictments are protected from disclosure under Exemption 3 and Rule 6(e) because they "would tend to reveal the secret workings of the grand jury." Def.'s Mem. at 8 (citing Boehm v. FBI, 948 F. Supp. 2d 9, 27 (D.D.C. 2013)). The plaintiff responds that the Archives has failed to meet its burden of showing that the draft indictments constitute "matter[s] occurring before the grand jury," Pl.'s Opp'n at 18, because it relies upon a declarant who "paints with far too broad of a brush," id. at 14, and presents "opaque and shifting, if not contradictory, testimony," Pl.'s Reply at 9.

Although Rule 6(e) prohibits disclosure of "matter[s] occurring before [a] grand jury," it should not be read in a manner that creates "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury." Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)). "There is no per se rule against disclosure of any and all information which has reached the grand jury chambers . . . ." Senate of P.R., 823 F.2d at 582. Rather, "the touchstone is whether disclosure would 'tend to reveal some secret aspect of the grand jury's investigation,'" such as "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors and the like." Id. And, there must be a "nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." Lopez v. Dep't of Justice, 393 F.3d 1345, 1350 (D.C. Cir. 2005) (quoting Senate of P.R., 823 F.2d at 584).

Furthermore, information such as the names of grand jury witnesses and a draft of a

grand jury indictment "tend to reveal the secret workings of the grand jury." Boehm, 948 F. Supp. 2d at 27 (finding withholding of draft indictment appropriate under Exemption 3). So too does grand jury testimony. Boyd, 87 F. Supp. 3d at 83 ("[G]rand jury testimony is precisely the type of information that the provision is designed to protect."). When determining whether to qualify withheld material as "grand jury" material, it is appropriate to rely on statements by the government's declarant. See Davis v. U.S. Dep't of Justice, 970 F. Supp. 2d 10, 17 (D.D.C. 2013) (Walton, J.) (allowing withholding of documents based on declarant's statements that revealing them would impermissibly reveal grand jury information).

Here, the drafts of the proposed indictment sought by the plaintiff would likely tend to reveal the inner workings of the grand jury, just like the draft indictments in Boehm, 948 F. Supp. 2d at 27. The Archives has presented two declarations from Martha Wagner Murphy, the Chief of the Special Access and FOIA Branch, Research Services at the Archives, outlining the contents of the draft indictments. See Def.'s Mem., Ex. A (Declaration of Martha Wagner Murphy ("First Murphy Decl.")) at 1, 8-12; Def.'s Response, Ex. A (Second Declaration of Martha Wagner Murphy ("Second Murphy Decl.")) at 3-5. In her first declaration, Ms. Murphy explains that the drafts of the proposed indictment

> collectively reflect[] names and identifying information of individuals subpoenaed – or intended to be subpoenaed – to testify before the grand jury, as well as information identifying specific records subpoenaed during the grand jury process. They reflect and quote grand jury testimony, and reveal the inner workings and direction of the grand jury. . . . Similarly, the consideration of possible witnesses before the Grand Jury, and internal memoranda and notes about the strategy and considerations regarding possible indictments reveal the direction of the grand jury investigation.

First Murphy Decl. ¶ 25. Consequently, Ms. Murphy concluded that disclosure of the drafts of the proposed indictment "would violate the secrecy of the grand jury proceedings by disclosing the inner workings of the federal grand jury that was tasked with considering these matters." Id.

In her second declaration, which served as a supplement "to strengthen [her] explanation of the analytical process that the Archives engaged in when it reviewed the requested documents,"[4] Second Murphy Decl. ¶ 1, Ms. Murphy added:

> Any indictment is a written accusation of a crime and is crafted for the specific purpose of persuading a grand jury to formally charge one or more individuals. These draft indictments reflect the net result of all of the evidence gathered throughout the grand jury investigatory process; they represent a compilation and distillation of all of the evidence gathered and presented before the grand jury up until the time the draft indictments were prepared.  As a result, they are inextricably intertwined with the grand jury process . . . . [And] none of the drafts that we reviewed contained information that we determined had been obtained separate from the grand jury process.

Id. ¶¶ 5-6.  Thus, the drafts contain precisely the information that Rule 6(e) is intended to protect – information that "would tend to reveal some secret aspect of the grand jury's investigation."

Senate of P.R., 823 F.2d at 582; see also Boehm, 948 F. Supp. 2d at 27; Boyd, 87 F. Supp. 3d at 83.  More importantly,  "[b]ecause a draft indictment is inextricably tied to the Grand Jury process, the development of the indictment, illuminated as each draft carefully refines the argument for charging the accused individuals, provides a roadmap to that process."  Second Murphy Decl. ¶ 7.  Accordingly, the Court finds that the drafts of the proposed indictment would disclose the identity of individuals who actually testified before the grand jury and who the independent counsel considered calling as witnesses, as well as the inner workings of the federal grand jury process that would necessarily show the potential direction of the grand jury proceedings, given that the independent counsel likely drafted the documents based on testimony and other information presented to that body.

Moreover, the plaintiff's contention that the declarations are too vague, generalized, and

---

[4] The plaintiff asserts that the Second Murphy Declaration contradicts the first by stating in broader terms that "[t]hese draft indictments reflect the net result of all the evidence gathered throughout the grand jury investigatory process; they represent a compilation and distillation of all the evidence gathered and presented before the grand jury."  Pl.'s Reply at 6.  The Court, however, finds the Second Murphy Declaration to be consistent, as it merely elaborates on the first.

conclusory to satisfy the Archives' burden is unavailing.   The plaintiff cites <u>Citizens for</u>

<u>Responsibility & Ethics in Washington v. U.S. Dep't of Justice</u>, 746 F.3d 1082, 1100 (D.C. Cir.

2014), as support for its position that the conclusory descriptions of grand jury material

contained in the draft indictments are not sufficient to warrant their withholding.   There,

however, the defendant's declaration asserted that "the documents contain[ed] information that

'<u>could</u> be used as evidence before a Federal Grand Jury' or '<u>may</u> be subpoenaed by a Federal

Grand Jury[,]'" <u>Citizens for Responsibility</u>, 746 F.3d at 1100 (emphasis in original), whereas

here, the defendant contends that information that "would reveal some secret aspect of the grand

jury investigation," including "the identities of witnesses, the substance of testimony, [and] the

strategy or direction of the investigation," <u>Senate of P.R.</u>, 823 F.2d at 582, is affirmatively

contained in the documents.   Also, the court in <u>Citizens for Responsibility</u>, found fault with the

defendant's failure to specify how many documents were being withheld pursuant to Exemption

3. <u>Id.</u> But, in this case, the Archives has stated that it is withholding 238 documents responsive

to the plaintiff's FOIA request. Therefore, unlike the declarations in <u>Citizens for Responsibility</u>,

Ms. Murphy's declarations do not merely state in a conclusory fashion that Rule 6(e) material

has been withheld, but instead specifies the precise nature of the contents of the draft

indictments, sufficiently demonstrating that the withheld material is of the type intended to be

protected by Rule 6(e).

   The plaintiff further devotes a significant portion of its argument discussing <u>In re Sealed</u>

<u>Case</u>, 192 F.3d 995 (D.C. Cir. 1999), as support for its contention that the draft indictments are

not matters that occurred before the grand jury.   <u>See</u> Pl.'s Opp'n at 11-13.   Specifically, the

plaintiff argues that <u>In re Sealed</u> places the burden on the agency to show that the withheld

information "will reveal non-public facts known to prosecutors only because of the grand jury's

investigation, not because of [the] prosecutor's own investigations or others' investigations [and] non-public matters that actually occurred or were likely to occur before the grand jury." Id. at 13.

Courts must distinguish between grand jury investigations and coincidental investigations conducted by third parties, such as by independent companies, see Dresser Indus. Inc., 628 F.2d at 1382-83 (holding Rule 6(e) inapplicable to documents that "were created [by a Corporation] for [an] independent corporate purpose" even though government agency subpoenaed the documents while grand jury investigation was being conducted), or prosecutorial investigations, In re Sealed Case, 192 F.3d at 1002-03 (holding mere general statements by Office of Independent Counsel prosecutors to the New York Times regarding their "belief" on the direction of their own investigation did not constitute Rule 6(e) material). When, however, an entity possesses information directly resulting from a grand jury investigation, the material is not coincidental, and Rule 6(e) applies. See Fund for Constitutional Gov't, 656 F.2d at 870 (holding Rule 6(e) applicable because material was not coincidental to grand jury investigation, but rather a direct result of it). The draft indictments are not merely statements of "prosecutorial deliberation" like the statements made by junior attorneys to the New York Times in In re Sealed Case, 192 F.3d at 1001, concerning the possible direction of the investigation in that matter, but rather are documents containing "information that [was not] obtained separate and apart from the grand jury process." Second Murphy Decl. ¶ 6. Likewise, they are not materials prepared coincidentally to the grand jury investigation, but instead were prepared as a direct result of the ongoing grand jury investigation. See id. ¶ 5 ("These draft indictments reflect the net result of all of the evidence gathered throughout the grand jury investigatory process; they represent a compilation and distillation of all of the evidence gathered and presented before the grand jury

up until the time the draft indictments were prepared."). "The relevant inquiry is not whether the party seeking the information has an interest other than in its role in a grand jury investigation, but whether revelation in the particular context would in fact reveal what was before the grand jury." Fund for Const. Gov't, 656 F.2d at 870 (citing Murphy v. FBI, 490 F. Supp. 1138, 1141 (D.D.C. 1980)). Thus, the Archives has established that disclosure of the drafts of the proposed indictment would reveal matters occurring before the grand jury.

In sum, the plaintiff's argument simply seeks to heighten the Archives' burden to a degree of particularized specificity as to the meaning of each word used by the declarant to describe the type of information contained within the withheld documents. However, as the Court noted above, the Archives only bears the burden of showing some "nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." Lopez, 393 F.3d at 1350 (citations omitted). Therefore, because Ms. Murphy's declarations sufficiently establish a "nexus" between disclosing the draft indictments and revealing the inner workings of the grand jury process, the Court finds that the Archives has satisfied its burden of showing that the draft indictments are protected from disclosure under Rule 6(e).[5]

### c.  The Purpose of Rule 6(e)

The plaintiff next argues that the information contained in the draft indictments is sufficiently public to warrant disclosure because the secrecy to be protected by Rule 6(e) no longer exists. "Rule 6(e) does not create a type of secrecy which is waived once public disclosure occurs." In re North, 16 F.3d at 1245 (quoting Barry v. United States, 740 F. Supp.

---

[5] The plaintiff also asserts that, "[t]o the extent [the Archives] claims that it was only following a long-established practice of not disclosing draft indictments unless an indictment was formally issued, then [it] has failed to satisfy its FOIA obligations." Pl.'s Reply at 8 (citing Shapiro v. U.S. Dep't of Justice, 153 F. Supp. 3d 253 (D.D.C. 2016)). The Court, however, does not find that the Archives withheld the drafts pursuant to this practice, but merely used this practice of withholding "any draft indictment of a living person if no indictment is ever formally issued" as a starting point. Second Murphy Decl. ¶ 5. Rather, the Archives explicitly stated that it withheld the drafts in their entirety after reviewing the drafts and determining that they were Rule 6(e) material that should not be disclosed. Id.

888, 891 (D.D.C. 1990)).  However, once information is sufficiently widely known, it has "lost

its character as Rule 6(e) material[, as t]he purpose in Rule 6(e) is to preserve secrecy." Id. at

1244-45 (holding the purported Rule 6(e) material – the final report of the Office of the

Independent Counsel – no longer protected from release because the Independent Counsel's

"four interim reports to Congress included most, if not all, of the 6(e) material now disclosed in

the Final Report."). To show that withheld information must be disclosed based on prior

disclosure, a plaintiff must show that the specific information sought is already in the public

domain. Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency, 678 F.3d 926, 933 (D.C. Cir. 2012) ("A

plaintiff asserting a claim of prior disclosure bears the burden of pointing to 'specific information

in the public domain that appears to duplicate that being withheld.'"); Davis v. U.S. Dep't of

Justice, 968 F.2d 1276, 1280 (D.C. Cir. 1992) (stating requester must "point to 'specific'

information identical to that being withheld"); see also In re Sealed Case, 192 F.3d at 1004

(holding that usual Rule 6(e) secrecy protecting identity of witnesses did not apply to the

President because it was already widely known that he had testified in front of the grand jury).

     Here, the plaintiff's attempt to demonstrate that the information contained in the draft

indictments is already in the public domain and widely available because of the independent

counsel's final reports and a 206-page memorandum bearing the subject line Summary of

Evidence: Hillary Rodham Clinton and Webb Hubbell ("Evidence Memorandum"), which are

available to the public and contain grand jury information, see Pl.'s Opp'n at 18-19; Pl.'s Reply

at 9, does not rise to the level of specificity required by the District of Columbia Circuit. The

plaintiff presented two declarations from Paul J. Orfanedes, counsel, officer, and director for

Judicial Watch, Inc., who prepared charts identifying the sources of information included in the

Independent Counsel's January 5, 2001 Final Report ("Final Report") and the Evidence

Memorandum.  See Pl.'s Opp'n, Ex. 1 (Declaration of Paul J. Orfanedes ("First Orfanedes

Decl.")) at 1, 2-5; Ex. A (Chart for Final Report) to Ex. 1 at 4-5; Ex. B (Chart for Evidence

Memorandum) to Ex. 1 at 2-4; see also Pl.'s Reply, Ex. 1 (Second Declaration of Paul J.

Orfanedes ("Second Orfanedes Decl.")) at 2.  Through these declarations and the charts, the

plaintiff purports to show that the Final Report and the Evidence Memorandum "cite[],

reference[], and quote[] testimony" from grand jury witnesses.  First Orfanedes Decl. ¶ 7.  Mr.

Orfanedes also conducted "[G]oogle search[es]" for "Starr Report" and "Hillary Clinton draft

indictment," which rendered 13,200,000 and 547,000 search results respectively.  Id. ¶ 10.  And,

Mr. Orfanedes represents that the plaintiff's "efforts to gain access to the draft indictments has

been the subject of news reports" by various media outlets.  Id. ¶ 11.  While these efforts may

provide some support, the plaintiff has not pointed to specific items of information in the public

domain that sufficiently demonstrate that the information contained in the drafts of the proposed

indictment are publicly available to warrant disclosure.  Instead, the plaintiff contends that

because paraphrased and quoted grand jury testimony was generally released to the public in the

Final Report and the Evidence Memorandum, see Pl.'s Opp'n, Ex. A (Chart for Final Report) to

Ex. 1 at 4-5 (identifying the pin cites of where grand jury testimony was either cited, referenced,

or quoted in the Final Report); Ex. B (Chart for Evidence Memorandum) to Ex. 1 at 2-4

(identifying the pin cites of where grand jury testimony was either cited, referenced, or quoted in

the Evidence Memorandum), the grand jury information in the draft indictments that reveal the

inner workings of the grand jury process must have also been released, and as such, there is no

secrecy left to protect.  The Court is not convinced that such a presumption demonstrates the

level of specificity needed to show that the contents of drafts of the proposed indictments are

sufficiently within the public domain and have lost their exempt status.

Nonetheless, the Archives, in response to a 2005 FOIA request for access to the Evidence Memorandum, "examined that document and compared it to the publicly released" Final Report. Second Murphy Decl. ¶ 3. Because the Archives "understood that [the Evidence Memorandum] may contain non-grand jury material," they conducted

> an analysis of the factual and stylistic presentment in both documents, [which] enabled [them] to draw important distinctions between information in the Evidence Memorandum that had already been released to the public in the Final Report, and that information in the Evidence Memorandum that was considered grand jury information and should continue to be withheld. [This] resulted in a partial release of the Evidence Memorandum with redactions for grand jury material (as well as other redactions).

Id.; see also First Orfanedes Decl., Ex. 3 (Evidence Memorandum).  The Archives conducted the same examination and analysis with respect to the draft indictments, comparing the drafts to the Final Report and the Evidence Memorandum, and concluded that "none of the drafts that we reviewed contained information that we determined had been obtained separate from the grand jury process." Second Murphy Decl. ¶ 6. More importantly, the draft indictments themselves were not released with the Final Report, id. ¶ 4, unlike in In re Sealed Case, "[w]here the general public [was] already aware of the information contained in the prosecutor's statement," which provided the general basis for an indictment of the "[President]'s alleged perjury before a grand jury," and of "the President's status as a witness before the grand jury . . . [because] the President himself went on national television the day of his testimony to reveal this fact . . . well before the New York Times article at issue in [that] case was written," 192 F.3d at 1004, or in In re North, where most, if not all, of the Rule 6(e) material was disclosed in the independent counsel's final report, 16 F.3d at 1245.  Consequently, the Court is not persuaded that the plaintiff has satisfied its burden of demonstrating that the information sought has "lost its character as Rule 6(e) material" due to its alleged considerable availability to the public.

### 2.  Exemptions 6 and 7(C)

The Archives also withheld the drafts of the proposed indictments under Exemptions 6 and 7(c) because the drafts involve a significant privacy interest that is not outweighed by any public interest that would justify disclosure. Def.'s Mem. at 9. Because the Archives has invoked both Exemptions 6 and 7(c), the Court will address only the question of whether the drafts were properly withheld under Exemption 7(c). See Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (holding that there is no need to consider Exemption 6 separately if information was "compiled for law enforcement purposes" because Exemption 7(c) constitutes broader protection, so any information falling under Exemption 6 is covered by Exemption 7(c)); accord Gilliam v. U.S. Dep't of Justice, 128 F. Supp. 3d 134, 142 (D.D.C. 2015). Exemption 7(c) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c).

Here, it is undisputed that the draft indictments were compiled in the course of the independent counsel's investigation of possible violations of federal law, and thus were compiled for law enforcement purposes. Def.'s Mem. at 9-10; Pl.'s Opp'n at 19. The remaining inquiry for the Court is therefore whether the production of the records would constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(c). To make that determination, the Court must first decide whether there is a legitimate privacy interest protected by Exemption 7(c) and then whether there is a countervailing public interest that outweighs it. See Citizens for Responsibility, 746 F.3d at 1091 (stating "[o]ur task, then, is 'to balance the [] privacy interest against the public interest in disclosure[,]'" after establishing that the requested records were compiled for law enforcement purposes) (some alteration in original) (citing Nat'l Archives &

Records Admin. v. Favish, 541 U.S. 157, 171 (2004)); see also Boyd, 87 F. Supp. 3d at 72-73.

The Court will address each inquiry in turn.

### a.   Hilary Clinton's Personal Privacy Interests

The parties do not dispute that any person other than Mrs. Clinton has any privacy

interest in the drafts of the proposed indictments.   See Pl.'s Opp'n at 19.   They do, however,

disagree on whether Mrs. Clinton has a viable personal privacy interest that precludes an

unwarranted invasion.   See id.   The Archives asserts that "Mrs. Clinton has a significant personal

privacy interest in avoiding disclosure of the drafts of the proposed indictment," Def.'s Mem. at

10, because such disclosure

> would therefore deprive Mrs. Clinton of the ability to "control[] information
> concerning criminal charges" that were never brought against her, see ACLU, 750
> F.3d at 929, thereby depriving her of "[t]he presumption of innocence [that]
> stands as one of the most fundamental principles of our system of criminal
> justice," see id. [at] 933, and "placing [her] in the position of having to defend
> [her] conduct in the public forum outside of the procedural protections normally
> afforded the accused in criminal proceedings." See Fund for Const. Gov't, 656
> F.2d at 865.

Def.'s Response at 13.   The plaintiff responds that the Archives "fails to identify a single,

specific privacy interest [that] Mrs. Clinton still has in the draft indictments following the

publication[s] of the [Final] Report and the Evidence Memorandum," Pl.'s Reply at 11-12, which

was authorized by the District of Columbia Circuit and the Archives respectively, see id., and

"vitiate[d] Mrs. Clinton's privacy interests [upon their] publishing," id. at 13.

When evaluating the privacy interest relevant to Exemption 7(c), "[t]he privacy interest at

stake belongs to the individual, not the government agency." Petrucelli v. Dep't of Justice, 51 F.

Supp. 3d 142, 164 (Walton, J.) (citing Reporters Comm., 489 U.S. at 763-65).   "[I]nformation in

an investigatory file tending to indicate that a named individual has been investigated for

suspected criminal activity is, at least as a threshold matter, an appropriate subject for exemption

under 7(c)." Fund for Const. Gov't, 656 F.2d at 863 (citation omitted).  More specifically,

"individuals have a strong interest in not being associated unwarrantedly with alleged criminal

activity." Petrucelli, 51 F. Supp. 3d at 164 (quoting Stern v. Fed. Bureau of Investigation, 737

F.2d 84, 91-92 (D.C. Cir. 1984)); see also Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781

(D.C. Cir. 1990).  This interest is even more substantial when criminal charges were never filed.

See Am. Civil Liberties Union v. U.S. Dep't of Justice, 750 F.3d 927, 933 (D.C. Cir. 2014)

("Although the fact that such defendants were accused of criminal conduct may remain a matter

of public record, they are entitled to move on with their lives without having the public reminded

of their alleged but never proven transgressions.").

     Particularly instructive to this case is the District of Columbia Circuit's analysis of

privacy interest under Exemption 7(c) in Citizens for Responsibility.  746 F.3d at 1091-93.

There, the Circuit discussed a FOIA request in conjunction with an investigation conducted by

the Federal Bureau of Investigation ("FBI") of former House of Representatives Majority Leader

Tom DeLay, in addition to other suspects. Id. at 1087.  Ultimately, the FBI decided not to file

charges against Mr. DeLay.  In analyzing his privacy interests under the FOIA, the Circuit

determined that there are two cognizable interests for individuals in Mr. Delay's position:  (1)

"avoiding the stigma of having his name associated with a criminal investigation," and (2) a

"distinct privacy interest in the contents of the investigative files." Id. at 1091-93.  Despite the

fact that it was widely known that Mr. DeLay had been the subject of an investigation, the

Circuit nonetheless concluded that he still retained a privacy interest in further disclosure of the

files entirely. Id.

     In this case, the Court agrees with the plaintiff's assertion that Mrs. Clinton no longer has

an interest in "avoiding the stigma" of having her name associated with the criminal

investigation at issue, because it is widely known that this investigation was conducted. Pl.'s Opp'n at 20. However, similar to the individuals in American Civil Liberties Union v. U.S. Department of Justice, 750 F.3d at 933 (holding that the defendants had significant privacy interest in being able to proceed forward with their lives by being able to "control[] information concerning criminal charges" never filed against them), Mrs. Clinton has a significant privacy interest in not re-visiting past criminal investigations, particularly when the investigation resulted in an indictment never being filed against her. See Fund for Const. Gov't, 656 F.2d at 864 ("Typically, the decision not to prosecute insulates individuals who have been investigated but not charged from th[e] rather significant intrusion into their lives."). Although Mrs. Clinton, "as a public official at th[at] time, 'may have a somewhat diminished privacy interest,' [she] 'd[id] not surrender all rights to personal privacy.'" Citizens for Responsibility, 746 F.3d at 1092 (quoting Quinon v. FBI, 86 F.3d 1222, 1230 (D.C. Cir. 1996)). And similar to the conclusion reached in Citizens for Responsibility, Mrs. Clinton still maintains an interest in the contents of the drafts of the proposed indictment, despite the fact that it is widely known that she was one of the subjects of an independent counsel investigation.

Moreover, the fact that information about the independent counsel's investigation and potential indictment of Mrs. Clinton is readily available to the public does not extinguish Mrs. Clinton's privacy interest, as the plaintiff asserts. See Pl.'s Opp'n at 19 (discussing the release of the Final Report and the Evidence Memorandum, along with numerous hits returned from Google searches). Although an individual's "interests in privacy fade when the information involved already appears on the public record," ACLU, 655 F.3d at 9 (citing U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 764 n.15 (1989)), "the fact that an event is not wholly private does not mean that an individual has no interest in limiting

disclosure or dissemination of [the requested] information," People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, 745 F.3d 535, 542 (D.C. Cir. 2014) (quoting Reporters Comm., 489 U.S. at 770).

Here, the plaintiff has not shown that the information contained in the drafts of the proposed indictment are widely available to the public, let alone to the extent that the privacy interest Mrs. Clinton has in the drafts is extinguished. "Indeed, if the [drafts of the proposed indictments] were 'freely available,' there would be no reason to invoke the FOIA to obtain access to the information they contain." Reporters Comm., 489 U.S. at 764 ("Plainly there is a vast difference between the public records that might be found after a diligent search . . . and [the requested information.]"). And, contrary to the plaintiff's assumption that this Circuit vitiated Mrs. Clinton's privacy rights in the drafts when it authorized the publishing of the Final Report, the plaintiff has not pointed to any evidence that the Circuit actually considered Mrs. Clinton's privacy rights in regards to the content of the drafts, particularly, in light of the fact that the drafts were not included in the Final Report. Accordingly, the Court finds that Mrs. Clinton has a substantial privacy interest in the contents of the drafts of the proposed indictment.

### b.  Countervailing Public Interest

Having found that Mrs. Clinton has a substantial privacy interest that is protected by Exemption 7(c), the Court turns to the question of whether public interest outweighs Mrs. Clinton's significant privacy interest, justifying disclosure of the draft indictments. The plaintiff asserts that the public has two substantial interests in disclosure,

> both of which directly bear on citizens' right to be informed about what their government is up to: (1) public interest in the actions of the independent counsel; and (2) public interest in the actions of Mrs. Clinton as first lady of the United States, as well as in her subsequent actions as a United States senator, United States secretary of state, and the Democratic Party's presumptive nominee for president of the United States.

Pl.'s Reply at 13.

"The Supreme Court has stated that FOIA is focused 'on the citizens' right to be informed about what their government is up to.'" Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996) (quoting Reporters Comm., 489 U.S. at 773). Once the private nature of a document has been established, whether or not disclosure of that document is warranted "turn[s] on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny.'" See Reporters Comm., 489 U.S. at 772 (quoting Rose, 425 U.S. at 372). To defeat the privacy interest, the requestor "must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'" Boyd, 87 F. Supp. 3d at 73 (citation omitted). In determining "what the[] government is up to," the relevant public interest is not to find out what was the substance of an agency investigation, but rather the focus is on the conduct of the agency that performed the investigation:

> Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct. In this case-and presumably in the typical case in which one private citizen is seeking information about another-the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed any light on the conduct of any Government agency or official.

Reporters Comm., 489 U.S. at 773. "Information that reveals 'little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." Beck v. Dep't of Justice, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting Reporters Comm., 489 U.S. at 773); see also Davis, 968 F.2d at 1282 (holding that

public interest in individual's alleged involvement in criminal activity insignificant because disclosure would reveal little to nothing about agency conduct, let alone conduct of the agency possessing the documents).  Nonetheless, while the public interest cannot be based purely on gathering information about an individual, there is a cognizable public interest in knowing how a government agency goes about investigating high-ranking officials.  See Citizens for Responsibility, 746 F.3d at 1093-94 (recognizing the significance of public interest in knowing how the FBI investigates high-ranking officials).

The plaintiff, in this case, has not established that the information contained in the drafts of the proposed indictment would yield information about what the government "is up to." Reporters Comm., 489 U.S. at 773.  Initially, the plaintiff asserts that the public has an interest in the activities of the independent counsel, and particularly, how he conducted the investigation of Mrs. Clinton, as evidenced by the results disclosed by its Google searches. Pl.'s Reply at 13-14. However, this public interest in the activities of the independent counsel likely does not rise to the level contemplated by the Circuit in Citizens for Responsibility.  There, the court noted that "we have repeatedly recognized a public interest in the manner in which the [Department of Justice] carries out substantive law enforcement policy." Citizens for Responsibility, 746 F.3d at 1093 ("Disclosure of the records would likely reveal much about the diligence of the FBI's investigation and the [Department of Justice]'s exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches.")  And admittedly, if the "investigation implicate[s] a public official as prominent as [Mrs. Clinton,]" the public interest is heightened.  Id. at 1094 ("It may show whether prominent and influential public officials are subjected to the same investigative scrutiny and prosecutorial zeal as local aldermen and little-known lobbyists.").  But, how the FBI and other investigative government agencies conduct

investigations concerning criminal misconduct, and in the case of Citizens for Responsibility a concurrent criminal investigation, is different from the activities of a discrete and now defunct government agency that has not been in existence for nearly two decades. More importantly, the plaintiff does not allege misconduct on the part of either the Archives or the Office of the Independent Counsel or present compelling evidence that either agency has engaged in improper activity. See Favish, 541 U.S. at 174 ("[T]he requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."). Consequently, disclosure of the drafts of the proposed indictment would likely "not shed any light on the conduct of [the Office of the Independent Counsel]," but would rather disclose only information about Mrs. Clinton that is "accumulated in various governmental files." Reporters Comm., 489 U.S. at 773.

Furthermore, the plaintiff asserts that the public has an interest in the actions of Mrs. Clinton while she previously served as the first lady of the United States, a United States senator, and the United States Secretary of State, as well as her position as the presumptive Democratic Party's nominee for President of the United States.[6] See Pl.'s Opp'n at 23. In making this assertion, the plaintiff recognizes "that, when weighing whether disclosure is in the public interest, D.C. Circuit case law often differentiates between what a record will reveal about an agency's performance of its statutory duties and what that same record will reveal about the actions of a particular individual." Id. at 24 n.12 (citing Citizens for Responsibility, 746 F.3d at 1093). But, the plaintiff argues that Mrs. Clinton was not a private citizen when the investigation

---

[6] Under the FOIA, "an agency's disclosure obligations are triggered by its receipt of a request," Espinoza v. Dep't of Justice, 20 F. Supp. 3d 232, 238 (D.D.C. 2014) (citing 5 U.S.C. § 552(a)(3)(A)), and continue until the "agency proves that it has 'fully discharged its [FOIA] obligations,'" Sciacca v. Fed. Bureau of Investigation, 23 F. Supp. 3d 17, 27 (D.D.C. 2014) (quoting Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996)). At the time the Archives determined it had fully discharged its obligations under the FOIA with respect to the plaintiff's FOIA request, Mrs. Clinton was the presumptive nominee for the Democratic Party's candidate for President of the United States.

was conducted, and that she has held other high level federal positions after the investigation was closed and now is seeking the highest office in the federal government and that Circuit case law, "holding that the only relevant public interest is in shedding light on how agencies perform their statutory duties[,] do[es] not address this highly unique factual situation [and is therefore] inapposite." Id. However, the Court is not convinced that it should (or even can) depart from the precedents already established by the Circuit. While Mrs. Clinton was first lady of the United States at the time of the investigation, she was neither part of a government agency nor a government official when the events that were the subject of the independent counsel's investigation occurred, which led to the drafting of the proposed indictments. More importantly, although the plaintiff seeks to cloak the public interest in this case with the veil of seeking to know "what the government 'is up to,' or at least 'was up to' during her tenure in multiple federal offices [and] 'may be up to' should Mrs. Clinton be elected president," Pl.'s Reply at 15, the Court finds that the proper characterization of this public interest is an attempt to obtain information that "bears on Mrs. Clinton's honesty, credibility, and trustworthiness," Pl.'s Opp'n at 23. Thus, disclosure of the drafts of the proposed indictment would not shed light on any agency's performance of its statutory duties, but potentially shed light solely on the character of Mrs. Clinton, independent to her position as a public official, which is not the objective of the FOIA. See Reporters Comm., 489 U.S. at 773.

Accordingly, because the public interests offered by the plaintiff would not advance the purpose of the FOIA, the Court finds that the proffered public interests do not sufficiently outweigh Mrs. Clinton's privacy interests in the drafts of the proposed indictment to justify an unwarranted invasion of Mrs. Clinton's privacy. Therefore, the drafts of the proposed indictment are protected from disclosure under Exemption 7(c).

## B. Segregability

Because the Court has determined that the drafts of the proposed indictment are protected from disclosure by Exemptions 3, 6 and 7(c), its analysis must next address the issue of segregability. The plaintiff asserts that the Archives, in withholding the drafts of the proposed indictment in their entirety, has not "conduct[ed] a proper segregability analysis of each draft and justifie[d] its determinations with detailed, non-conclusory findings." Pl.'s Reply at 18.

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed <u>unless</u> they are inextricably intertwined with exempt portions." <u>Wilderness Soc'y v. U.S. Dep't of Interior</u>, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.) (quoting <u>Mead Data Cent., Inc. v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977)). "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." <u>Mead</u>, 566 F.2d at 260.

A district court's determination that agency records are exempt from disclosure under the FOIA is subject to remand if the court does not also make specific findings on the question of segregability. <u>See</u> <u>Krikorian v. Dep't of State</u>, 984 F.2d 461, 467 (D.C. Cir. 1993) (remanding back to district court because no specific findings of segregability were made). To make this determination, the district court must be provided with a "relatively detailed description" of the withheld material. <u>Id.</u> (citing <u>Goldberg v. U.S. Dep't of State</u>, 818 F.2d 71, 78 (D.C. Cir. 1987). Agencies must review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether "the result would be

an essentially meaningless set of words and phrases." See Mead, 566 F.2d at 261 (stating result

of meaningless set of words may be sufficient to claim that the information is not segregable).  A

"document-by-document" review and a declaration that each piece of information that is

withheld is not reasonably segregable is sufficient to satisfy the requirement.  See Juarez v. U.S.

Dep't of Justice, 518 F.3d 54, 61 (D.C. Cir. 2008); Beltranena v. U.S. Dep't of State, 821 F.

Supp. 2d 167, 178-79 (D.D.C. 2011).

Here, the Court is satisfied that the Archives has conducted a proper segregability

analysis and may withhold the drafts of the proposed indictment in their entirety.  Upon receipt

of a "FOIA request for access to a box or records that a prior Independent Counsel has marked as

containing grand jury material, the Archives examines each individual record in the box to

determine whether each document should be withheld pursuant to Exemption 3 (Fed. R. Crim. P.

6(e))."  Second Murphy Decl. ¶ 3.  And while the independent counsel's markings are used as a

reference point, the Archives "conduct[s] an independent review in order to make its own

determinations as to whether the material does constitute grand jury information."  Id.  In its

review of the production request in this case, the Archives decided to withhold all of the

documents it identified as responsive to the plaintiff's request because

> the material collectively reflects names and identifying information of individuals
> subpoenaed – or intended to be subpoenaed – to testify before the grand jury, as
> well as information identifying specific records subpoenaed during the grand jury
> process.   They reflect and quote grand jury testimony, and reveal the inner
> workings and direction of the grand jury.  Disclosure would violate the secrecy of
> the grand jury proceedings by disclosing the inner workings of the federal grand
> jury that was tasked with considering these matters.  Similarly, the consideration
> of possible witnesses before the Grand Jury, and internal memoranda and notes
> about the strategy and considerations regarding possible indictments reveal the
> direction of the grand jury investigation.

First Murphy Decl. ¶ 25. In addition to this detailed description of the contents of the drafts of

the proposed indictment, the Archives submitted a chart, indexing and further describing the

materials.  See id. ¶ 23; see also id., Ex. A (Description of Records of Independent Counsel Kenneth Starr/Robert Ray/Julie Thomas).  Based on this review, the Archives concluded that all of the materials are "inextricably intertwined with the grand jury process and are not subject to segregation . . . [because] none of the drafts that [the Archives] reviewed contained information that [the Archives] determined had been obtained separate from the grand jury process."  Second Murphy Decl. ¶¶ 5-6.[7]

The Court finds particularly relevant here, the discussion of segregability in Goland, 607 F.2d at 350, which differentiated the segregability analysis under Exemption 3 from the other FOIA exemptions.  "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  Id.  Thus, the scope of the exemption is not determined by the FOIA itself, but by the protective statute that is being invoked under Exemption 3.  See Beltranena, 821 F. Supp. 2d at 179 (noting that when conducting a segregability analysis for material withheld under Exemption 3, "the court is mindful that while an agency must provide a 'detailed justification' for the non-segregability of any material withheld, an agency is also constrained by the need to avoid compromising 'the secret nature of potentially exempt information.'") (citations omitted).  As noted above, the Court is satisfied that the Archives has properly applied Rule 6(e) to protect grand jury material, and because the Archives has provided a detailed justification for withholding the drafts of the proposed indictment pursuant to Rule 6(e), the records can be withheld in their entirety.

The plaintiff also contends that a "mountain of grand jury material" has already been

---

[7] The Archives also represents that the accompanying documents such as the "fax cover pages, notes, and/or memoranda" were likewise withheld because "they were physically attached to – and an integral part of – the drafts."  Second Murphy Decl. ¶ 6.

made public, in light of the release of the independent counsel's Final Report and the Evidence Memorandum, and that the "enormous volume of publicly available material must be taken into account in a proper segregability analysis." Pl.'s Reply at 18. The Court again notes that the draft indictments were not released with either the Final Report or the Evidence Memorandum, and more importantly, the plaintiff has failed to show that the specific information contained in the draft indictments is already in the public domain. Although, the Archives, in response to a FOIA request, provided "a partial release of the Evidence Memorandum with redactions for grand jury material (as well as other redactions)," Second Murphy Decl. ¶ 3, this occurred because the Archives' examination, "which included an analysis of the factual and stylistic presentment of" the Final Report and the Evidence Memorandum, revealed "distinctions between information in the Evidence Memorandum that had already been released to the public in the Final Report, and that information in the Evidence Memorandum that was considered grand jury information and should continue to be withheld.," id. And, in its review of the drafts of the proposed indictment, the Archives "took into account the Final Report, and the redacted Evidence Memorandum." Id. ¶ 4.

Based on the declarations attesting to the review conducted by the Archives, coupled with the chart which indexed and further described the draft indictments, the Court finds that the Archives properly withheld the documents in full.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 4th day of October, 2016.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
JUDICIAL WATCH, INC.,                         )
                                              )
                 Plaintiff,                   )
                                              )
        v.                                    )        Civil Action No. 15-1740 (RBW)
                                              )
NATIONAL ARCHIVES AND                         )
RECORDS ADMINISTRATION,                       )
                                              )
                 Defendant.                   )
_____)

### ORDER

        In accordance with the Memorandum Opinion, issued on this same date, it is hereby

        **ORDERED** that the defendant National Archives and Records Administration's Motion

for Summary Judgment is **GRANTED**. It is further

        **ORDERED** that the plaintiff Judicial Watch, Inc.'s Cross-Motion for Summary

Judgment is **DENIED**. It is further

        **ORDERED** that this case is **CLOSED**.

        **SO ORDERED** this 4th day of October, 2016.


                                              REGGIE B. WALTON
                                              United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing **MEMORANDUM OPINION**

**AND ORDER** with the Clerk of the Court for the United States Court of Appeals

for the District of Columbia Circuit by using the Appellate CM/ECF system on

December 22, 2016.  Participants in the case are registered CM/ECF users and

service will be accomplished by the Appellate CM/ECF system.

<u>/s/ Paul J. Orfanedes</u>