**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 16-5366**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

JUDICIAL WATCH, INC.,

Plaintiff-Appellant,

v.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Columbia

### BRIEF FOR APPELLEE

*Of Counsel:*

JEANNETTE WISE
JEFFREY LANDOU
*Office of General Counsel*
*National Archives and Records*
  *Administration*
*8601 Adelphi Road, Ste. 3110*
*College Park, MD 20740*
*(301) 837-1899*

CHAD A. READLER
  *Acting Assistant Attorney General*

CHANNING D. PHILLIPS
  *United States Attorney*

DOUGLAS N. LETTER
NICOLAS Y. RILEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7231*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4814*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Appellant in this Court, who was plaintiff in the district court, is Judicial Watch, Inc.  Appellee in this Court, who was defendant in the district court, is the National Archives and Records Administration.  No amici curiae participated in this case during district court proceedings.

### B.    Rulings Under Review

The rulings under review are the Memorandum Opinion and accompanying Order issued by Judge Reggie B. Walton on October 4, 2016, docket numbers 19 and 20.  The opinion is not yet published.

### C.    Related Cases

This matter has not previously been before this Court or any other Court.  We are unaware of any related cases pending in this Court or any other court.

*s/ Nicolas Y. Riley*
NICOLAS Y. RILEY

# TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION .................................................................1

STATEMENT OF THE ISSUES.....................................................................1

PERTINENT STATUTES AND REGULATIONS ........................................1

STATEMENT OF THE CASE........................................................................2

      A.     The Freedom of Information Act................................................2

      B.     The Whitewater Investigation.....................................................4

      C.     Judicial Watch's 2014 FOIA Request:  April 1998 Evidence
             Memorandum .............................................................................6

      D.     Judicial Watch's 2015 FOIA Request:  Draft Indictment ..........6

SUMMARY OF ARGUMENT........................................................................9

STANDARD OF REVIEW ......................................................................... 11

ARGUMENT .............................................................................................. 12

I.     NARA properly withheld the drafts of the indictment under
      Exemption 3. ......................................................................................... 12

      A.     Disclosure of the drafts would violate Rule 6(e) by revealing secret
             aspects of the Whitewater grand jury proceedings. ....................13

      B.     Publicly available information about the Whitewater investigation
             does not mandate disclosure of the indictment drafts, which have
             never previously been disclosed. .................................................17

II.    NARA properly withheld the drafts of the indictment under
      Exemptions 6 and 7(C)......................................................................... 22

A.    Disclosure of the drafts would constitute an unwarranted invasion of Mrs. Clinton's personal privacy. ...............................................23

B.    Mrs. Clinton's privacy interests outweigh the public interests in disclosure that Judicial Watch has identified. ...............................26

III.    NARA properly concluded that no portions of the indictment drafts could be reasonably segregated. .............................................. 28

CONCLUSION .............................................................................................. 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s)**

*ACLU v. U.S. Dep't of Justice*,
   750 F.3d 927 (D.C. Cir. 2014) ........................................................................24

*Aleman v. Shapiro*,
   No. 85-3313, 1987 WL 10872 (D.D.C. May 5, 1987) ..................................14

*Bast v. U.S. Dep't of Justice*,
   665 F.2d 1251 (D.C. Cir. 1981) .....................................................................25

*Beck v. Dep't of Justice*,
   997 F.2d 1489 (D.C. Cir. 1993) .....................................................................26

*Boehm v. FBI*,
   948 F. Supp. 2d 9 (D.D.C. 2013) ...................................................................14

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*:

   *CREW I*, 746 F.3d 1082 (D.C. Cir. 2014) ................................. 24, 25, 26, 27

   *CREW II*, No. 16-5138, 2017 WL 1422487 (D.C. Cir. Apr. 21, 2017) ............... 25, 28

*Consumers' Checkbook Ctr. v. U.S. Dep't of Health & Human Servs.*,
   554 F.3d 1046 (D.C. Cir. 2009) .....................................................................11

*Davis v. U.S. Dep't of Justice*,
   968 F.2d 1276 (D.C. Cir. 1992) ................................................................ 17, 18

*Douglas Oil Co. v. Petrol Stops Northwest*,
   441 U.S. 211 (1979) .......................................................................................13

*Electronic Privacy Info. Ctr. v. NSA*,
   678 F.3d 926 (D.C. Cir. 2012) .......................................................................17

*FBI v. Abramson*,
   456 U.S. 615 (1982) .........................................................................................2

*Fund for Constitutional Gov't v. National Archives & Records Serv.*,
   656 F.2d 856 (D.C. Cir. 1981) ...............................................12, 14, 16, 24, 27

iv

*Hodge v. FBI,
   703 F.3d 575 (D.C. Cir. 2013) ........................................................ 13, 14, 15, 16

Juarez v. Dep't of Justice,
   518 F.3d 54 (D.C. Cir. 2008) ........................................................................28

*Lopez v. Dep't of Justice,
   393 F.3d 1345 (D.C. Cir. 2005) ............................................................ 13, 15

*Murphy v. Exec. Office for U.S. Attorneys,
   789 F.3d 204 (D.C. Cir. 2015) ...................................................................15

NARA v. Favish,
   541 U.S. 157 (2004) ............................................................................. 24, 28

In re North,
   16 F.3d 1234 (D.C. Cir. 1994) ...................................................................17

People for the Ethical Treatment of Animals v. National Institutes of Health,
   745 F.3d 535 (D.C. Cir. 2014) ...................................................................25

Quinon v. FBI,
   86 F.3d 1222 (D.C. Cir. 1996) ...................................................................27

Roth v. U.S. Dep't of Justice,
   642 F.3d 1161 (D.C. Cir. 2011) .................................................................23

In re Sealed Case No. 98-3077,
   151 F.3d 1059 (D.C. Cir. 1998) ......................................................... 19, 20

In re Sealed Case,
   192 F.3d 995 (D.C. Cir. 1999) ........................................................... 21, 22

Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice,
   823 F.2d 574 (D.C. Cir. 1987) .....................................................................3

Stern v. FBI,
   737 F.2d 84 (D.C. Cir. 1984) .....................................................................24

U.S. Dep't of Defense v. FLRA,
   510 U.S. 487 (1994) ............................................................................. 23, 26

U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,
   489 U.S. 749 (1989) ............................................................................. 22, 23

*United States v. Sells Engineering, Inc.*,
   463 U.S. 418 (1983) ..........................................................................................13

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ........................................................................18

**Statutes:**

Act of July 30, 1977, Pub. L. No. 95-78, 91 Stat. 319 ........................................3

Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1867 ...........................4

Freedom of Information Act:

   5 U.S.C. § 552(b) ..........................................................................................28

   5 U.S.C. § 552(b)(3) ........................................................................................3

   5 U.S.C. § 552(b)(6) ........................................................................................3

   5 U.S.C. § 552(b)(7)(C) ............................................................................ 4, 23

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

*28 U.S.C. § 594(k) ................................................................................ 5, 6, 12

**Rules:**

Fed. R. App. P. 4(a) ...........................................................................................1

Fed. R. Crim. P. 6(e) ................................................................................ 1, 3, 13

## GLOSSARY

FOIA                    Freedom of Information Act

JA                      Joint Appendix

NARA                    National Archives and Records Administration

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this Freedom of Information Act (FOIA) case under 28 U.S.C. § 1331 and entered summary judgment in the government's favor on October 4, 2016.  JA 386.  Judicial Watch, Inc. filed a timely notice of appeal on December 3, 2016.  JA 417; *see* Fed. R. App. P. 4(a)(1).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This FOIA action arises out of Judicial Watch's efforts to obtain drafts of a criminal indictment prepared (but never filed) by the Office of the Independent Counsel during its Whitewater investigation in the mid-1990s.  The National Archives and Records Administration (NARA), which houses the records from that investigation, withheld the drafts under FOIA Exemptions 3, 6, and 7(C).  The questions presented are:

1.  Whether NARA properly withheld the drafts of the indictment under Exemption 3 because disclosure of these drafts would violate Federal Rule of Criminal Procedure 6(e), which protects the secrecy of grand jury proceedings.

2.  Whether NARA properly withheld the drafts of the indictment under Exemptions 6 and 7(C) to protect the privacy interests of individuals named in these drafts.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

The National Archives and Records Administration (NARA) is responsible for preserving various governmental and historical records of the United States. Among its many holdings, the agency maintains the records of every investigation performed by every independent counsel appointed since 1978.

This case concerns records from one of the most high-profile independent-counsel investigations of that era: the ten-year probe into, *inter alia*, Bill and Hillary Clinton's investments in a failed Arkansas real estate venture known as the Whitewater Development Company. Although no criminal charges were ever filed against the Clintons as a result of that investigation, the Office of the Independent Counsel did convene two grand juries and considered pursuing an indictment against Mrs. Clinton. In this case, Judicial Watch seeks any drafts of such an indictment that the Office prepared during its investigation.

### A.    The Freedom of Information Act

The Freedom of Information Act (FOIA) generally requires federal agencies to disclose their records to the public. The statute contains several exemptions, however, reflecting Congress's recognition "that legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). NARA has invoked three of those exemptions here: Exemptions 3, 6, and 7(C).

2

Exemption 3 applies to records that Congress never intended for agencies to make public.  The provision shields agency records that are "specifically exempted from disclosure" by another federal statute.  5 U.S.C. § 552(b)(3).  In this case, NARA invoked Federal Rule of Criminal Procedure 6(e),[1] which mandates the secrecy of grand jury proceedings (with certain exceptions not relevant here).  Rule 6(e)(2) prohibits grand jurors, grand jury functionaries, and government attorneys (including those assisting them) from publicly disclosing "a matter occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2).  And Rule 6(e)(6) provides that "[r]ecords, orders, and subpoenas relating to grand jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6).

Exemptions 6 and 7(C) both aim to protect against agency disclosures that would intrude unduly upon individual privacy interests.  Exemption 6 permits an agency to withhold information contained in "personnel and medical files and similar files" if the disclosure of that information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) similarly exempts "records or information compiled for law enforcement purposes . . . to the

---

[1]  "Although rules of procedure promulgated by the Supreme Court generally do not qualify as 'statutes' for exemption (b)(3) purposes, Rule 6(e) does so qualify because it was specifically adopted by an Act of Congress." *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 n.23 (D.C. Cir. 1987); *see also* Act of July 30, 1977, Pub. L. No. 95-78, § 2(a), 91 Stat. 319 (adopting Rule 6(e)).

extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). There is no dispute that the indictment drafts at issue in this case qualify as "similar files" for the purposes of Exemption 6 and "records or information compiled for law enforcement purposes" for the purposes of Exemption 7(C).

### B.    The Whitewater Investigation

The Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1867, authorized the Attorney General to appoint an "independent counsel" to investigate high-ranking federal officials for violations of federal criminal law. In 1994, Attorney General Janet Reno exercised her authority under the Act by appointing Robert B. Fiske, Jr. to investigate allegations that Bill and Hillary Clinton—who were then serving as President and First Lady, respectively—had engaged in unlawful activities related to their investments in the Whitewater venture. JA 27, 388. Fiske was replaced later that year by Kenneth Starr, who continued to serve as independent counsel in the matter until 1999. JA 337, 388.

Among other subjects, the Whitewater investigation examined "whether Mrs. Clinton had committed perjury, made false statements, or obstructed justice" during the course of prior investigations into her and her husband's finances. JA 73. Those prior investigations had focused, in particular, on Mrs. Clinton's private law firm and its representation of an Arkansas thrift institution called Madison Guaranty Savings & Loan, which was owned by one of the Clintons' co-investors in Whitewater. *See* JA

4

74.  Between 1994 and 1998, two federal grand juries convened while the Office of

the Independent Counsel investigated these matters.  JA 338.

In January 2001, the Office published its "Final Report" detailing the results of

its "investigation of Mrs. Clinton's statements regarding her representation of

Madison Guaranty."  JA 74; *see generally* JA 70-157 (excerpt of Jan. 2001 Final Report).

The report concluded that "there was insufficient evidence to prove beyond a

reasonable doubt that Mrs. Clinton had committed any federal offense."  JA 73.  The

report noted that, although some of Mrs. Clinton's past statements concerning her

representation of Madison Guaranty were "factually inaccurate," the independent

counsel had determined that "a trier of fact would not conclude, beyond a reasonable

doubt, that Mrs. Clinton's recollection was knowingly false."  JA 157.  Accordingly,

the report explained, "prosecution of Mrs. Clinton regarding these allegations was

declined."  JA 157.

The Office of the Independent Counsel ultimately published four other reports

on the Whitewater investigation, before terminating the investigation in 2004.[2]  JA 53-

54.  At the conclusion of the investigation, all of the Office's records were transferred

to NARA, as required by federal law.  JA 26; 28 U.S.C. § 594(k)(1).  The statute

requiring transfer of these records provides that "the independent counsel shall clearly

---

[2]  Although the statutory provisions authorizing the appointment of an
independent counsel lapsed in 1999, investigations that had commenced prior to the
provisions' expiration date—like the Whitewater investigation—were permitted to run
their course.

identify which of these records are subject to rule 6(e) of the Federal Rules of Criminal Procedure as grand jury materials." 28 U.S.C. § 594(k)(1); *see also id.* § 594(k)(3). Several of the boxes transferred to NARA at the close of the Whitewater investigation—including both boxes containing the materials at issue in this case—were marked as Rule 6(e) materials. JA 27.

### C.    Judicial Watch's 2014 FOIA Request:  April 1998 Evidence Memorandum

In 2014, Judicial Watch filed a FOIA request with NARA seeking access to an evidence binder prepared by the Office of the Independent Counsel during its Whitewater investigation. JA 56. The binder contained a 206-page memorandum, dated April 1998, summarizing the evidence that the independent counsel had gathered against Mrs. Clinton up to that point. *See* JA 159. NARA provided Judicial Watch with a redacted version of the memorandum, as well as another roughly forty pages of other records from the binder. *See* JA 158-368 (redacted version of April 1998 memo). Judicial Watch did not challenge the agency's redactions to those documents.

### D.    Judicial Watch's 2015 FOIA Request:  Draft Indictment

In 2015, Judicial Watch filed a second FOIA request with NARA, seeking additional records from the Whitewater investigation. JA 12-15. This time, it requested:

> All versions of indictments against Hillary Rodham Clinton, including but not limited to Versions 1, 2, and 3 in box 2250 of the Hickman

> Ewing Attorney Files, the "HRC/___ Draft Indictment" in box 2256 of
> the Hickman Ewing Attorney Files, and all versions written by Deputy
> Independent Counsel Hickman Ewing, Jr. prior to September of 1996.

JA 12.[3]  NARA located 451 pages of responsive records, consisting of roughly a

dozen indictment drafts as well as several duplicates of those drafts.  JA 35.  The

drafts vary widely in content and length—from three pages at the short end to forty at

the long end—and many are annotated with handwritten notes and other marginalia.

JA 28, 35.  None of the drafts has previously been disclosed to the public.  JA 372.

 After NARA notified Judicial Watch that it intended to withhold each of the

drafts in its entirety, JA 42-43, Judicial Watch filed this action in district court, JA 5-8.

The parties cross-moved for summary judgment in early 2016.  In support of its

motion, NARA submitted two declarations from Martha Murphy, the archivist in

charge of the office that initially processed Judicial Watch's FOIA request.  *See* JA 21-

47 (Feb. 2016 Murphy Decl.); JA 369-74 (Apr. 2016 Murphy Decl.).  The declarations

set forth the agency's reasons for withholding the drafts under Exemptions 3, 6, and

7(C).  They also included an index describing, in general terms, each of the drafts

NARA had located.  *See* JA 35.

 The district court granted summary judgment to NARA, holding that the

agency was entitled to withhold the indictment drafts under each of the three

exemptions.  JA 387-416.  With respect to Exemption 3, the court held that the drafts

---

[3] Hickman Ewing, Jr. was an attorney who served as Kenneth Starr's deputy in
Little Rock, Arkansas, throughout the Whitewater investigation.  JA 389 n.2.

could not be disclosed in light of Rule 6(e) because they "disclose the identity of individuals who actually testified before the grand jury and who the independent counsel considered calling as witnesses." JA 397. The court noted that the drafts also "show the potential direction of the grand jury proceedings, given that the independent counsel likely drafted the documents based on testimony and other information presented to that body." JA 397. The court therefore upheld NARA's withholding decision under Rule 6(e), rejecting Judicial Watch's contention that "the information contained in the draft indictments is sufficiently public to warrant disclosure." JA 400.

With respect to Exemptions 6 and 7(C), the district court held that the disclosure of the drafts would constitute an unwarranted invasion of Mrs. Clinton's privacy. The court acknowledged that Mrs. Clinton's privacy interests were diminished somewhat by the fact that the public was already well aware of her involvement in the Whitewater investigation. JA 406-07. But it held that she nevertheless retained "a substantial privacy interest in the contents of the drafts," which may contain information that had not previously been made public. JA 408. That privacy interest, the court concluded, outweighed the public's interest in obtaining access to the drafts and therefore justified NARA's decision to withhold the documents under Exemption 7(C). JA 408-12. The court did not separately address whether withholding was justified under Exemption 6 because any material covered by that exemption would also be covered by Exemption 7(C). JA 404.

8

Finally, the district court held that NARA had "conducted a proper segregability analysis" and reasonably decided to withhold the drafts in full.  JA 414. The court agreed with NARA's archivist that the drafts were "inextricably intertwined with the grand jury process" and "not subject to segregation."  JA 415 (quoting JA 372).  It also rejected Judicial Watch's contention that prior disclosures about the Whitewater investigation required NARA to release excerpts of the drafts.  JA 416. Rather, as with its rulings on the exemptions, the court found that NARA had properly taken account of the prior disclosures when it performed its segregability analysis.  JA 416.

Judicial Watch appealed the district court's judgment in December 2016.

## SUMMARY OF ARGUMENT

Judicial Watch seeks to obtain drafts of an indictment prepared—but never filed—during a federal grand jury investigation.  As the district court correctly held, those drafts occupy the heartland of agency materials that Congress sought to shield from disclosure when it adopted Federal Rule of Criminal Procedure 6(e) and FOIA Exemptions 6 and 7(C).  NARA's decision to withhold the drafts under these provisions therefore vindicates Congress's longstanding efforts to protect both grand jury secrecy and individual privacy.

Judicial Watch urges this Court to disregard those important interests based principally on the fact that the subject of the proposed indictment is a well-known public figure: Hillary Clinton.  But neither Rule 6(e) nor Exemptions 6 and 7(C)

contain an exception for information about well-known public figures. Nor do they permit the disclosure of sensitive investigative records merely because the subject of the investigation is a public figure. Thus, in light of Judicial Watch's failure to identify any valid grounds for departing from Congress's well-established protections for grand jury secrecy and personal privacy, this Court should affirm the district court's ruling.

**I.** NARA properly withheld the indictment drafts under Exemption 3. As NARA's archivist explained in her declaration, a draft indictment represents quintessential grand jury material and, as such, is shielded from disclosure under Federal Rule of Criminal Procedure 6(e). The drafts at issue in this case not only contain confidential information about witness names, testimony, and evidence, but also reveal sensitive details about the direction and strategy of the Whitewater grand jury investigation. For those reasons, they fall squarely within the scope of Rule 6(e).

Prior disclosures of information concerning the Whitewater investigation do not alter that conclusion. Although the Office of the Independent Counsel may have previously revealed some information about the grand jury process in its reports on the Whitewater investigation, those disclosures do not strip the indictment drafts of their Rule 6(e) protections. The prior disclosures largely address different material than do the drafts and, even to the extent that they contain any overlapping material, disclosing the drafts would still reveal new information by singling out which evidence was actually presented to the grand jury.

10

**II.**   Even if the drafts of the indictment are not protected by Rule 6(e), NARA was still justified in withholding them under Exemptions 6 and 7(C).  Those exemptions require an agency to balance individual privacy interests against the public's interest in the disclosure before deciding whether or not to disclose any materials.  NARA properly performed that balancing analysis here and correctly concluded that Mrs. Clinton's interest in the contents of the indictment drafts—which have never previously been disclosed—outweighed the public's interest in learning more about the Office of the Independent Counsel's performance of its statutory duties during the Whitewater investigation.  Judicial Watch's contention that the public has an interest in learning more about Mrs. Clinton because she is a public figure is precluded by this Court's case law.

**III.**   NARA reasonably decided to withhold the indictment drafts in their entirety.  Because the drafts are inextricably intertwined with the grand jury process, they are completely shielded from disclosure under Rule 6(e).  Accordingly, the drafts are not susceptible to a traditional segregability analysis and must be withheld in full.

## STANDARD OF REVIEW

The district court's grant of summary judgment in a FOIA case is reviewed de novo.  *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

**ARGUMENT**

As explained below, the material at issue in this case was properly withheld, independently, under each of the FOIA exemptions NARA invoked.  Thus, if this Court agrees with the district court that NARA properly withheld the indictment drafts under Exemption 3—because the drafts are covered by Federal Rule of Criminal Procedure 6(e)—it need proceed no further.  Alternatively, this Court may uphold the district court's judgment based on the privacy protections in Exemptions 6 and 7(C), without considering the application of Exemption 3.  Either course is appropriate here.

## I.    NARA properly withheld the drafts of the indictment under Exemption 3.

Judicial Watch does not dispute that grand jury materials covered by Federal Rule of Criminal Procedure 6(e) must be withheld under Exemption 3.  Nor does it dispute that Rule 6(e) continues to protect grand jury materials after they have been transferred to NARA.[4]  Instead, Judicial Watch contends that the drafts of the indictment at issue in this case fall outside the scope of Rule 6(e) because they do not

---

[4]  Although Judicial Watch previously argued that Rule 6(e) does not apply to records archived at NARA, the district court rejected that argument, JA 393-95, and Judicial Watch has not renewed it on appeal.  In any event, Congress has made clear that Rule 6(e)'s protections continue to apply to independent-counsel records after they have been transferred to NARA.  *See* 28 U.S.C. § 594(k)(1) ("Before this transfer, the independent counsel shall clearly identify which of these records are subject to rule 6(e)."); *see also Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 873 (D.C. Cir. 1981) (applying Rule 6(e) to archived grand jury materials).

reveal any information about the Whitewater investigation that has not already been made public. As explained below, that argument is unavailing.

### A.  Disclosure of the drafts would violate Rule 6(e) by revealing secret aspects of the Whitewater grand jury proceedings.

The Supreme Court has long "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). Safeguarding the confidentiality of these proceedings serves "several distinct interests," such as encouraging reluctant witnesses to come forward, promoting candid testimony, and protecting the reputations of "persons who are accused but exonerated by the grand jury." *Id.* at 218-19.

To further these interests, Rule 6(e) prohibits certain participants in grand jury proceedings—including any "attorney for the government"—from "disclos[ing] a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(2)(B). Although the rule does not draw "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury," it does protect "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quotation marks and citations omitted). In determining whether agency records are covered by Rule 6(e), the touchstone is whether the "material would 'tend to reveal some secret aspect of the grand jury's investigation.'"

13

*Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (citation omitted); *see also United States*

*v. Sells Engineering, Inc.*, 463 U.S. 418, 425 (1983) ("In the absence of a clear indication

in a statute or Rule, we must always be reluctant to conclude that a breach of this

secrecy has been authorized.").

In this case, the drafts of the indictment prepared by the independent counsel

fall squarely within the scope of Rule 6(e).  NARA's supporting declarations make

clear that the drafts "represent a compilation and distillation of all of the evidence

gathered and presented before the grand jury up until the time the draft indictments

were prepared."  JA 372.  In particular, the drafts "quote grand jury testimony,"

"identify[] specific records subpoenaed during the grand jury process," and "reflect[]

names and identifying information of individuals subpoenaed—or intended to be

subpoenaed—to testify before the grand jury."  JA 29.  These are precisely the types

of information that Rule 6(e) is meant to protect.  *See, e.g.*, *Fund for Constitutional Gov't v.*

*Nat'l Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (holding that Rule

6(e) protects material from special prosecutor's Watergate investigation "naming or

identifying grand jury witnesses; quoting or summarizing grand jury testimony; . . . and

identifying documents considered by the grand jury").[5]

---

[5]  At least two district courts in this Circuit have held that draft indictments are
shielded from disclosure under Rule 6(e).  *See Boehm v. FBI*, 948 F. Supp. 2d 9, 27
(D.D.C. 2013); *Aleman v. Shapiro*, No. 85-3313, 1987 WL 10872, at *1 (D.D.C. May 5,
1987).

Many of the drafts also contain other Rule 6(e) material, including "notes about the [prosecutors'] strategy and considerations regarding possible indictments," which would likely "reveal the direction of the grand jury investigation." JA 29. Disclosing *multiple* drafts of the indictment would only compound these disclosures about the investigation's direction and strategy. As NARA's archivist explained, "each draft carefully refines the argument for charging the accused individuals," thereby "provid[ing] a roadmap to [the grand jury's] process." JA 373. This information— which shows how the grand jury's investigation unfolded over time—represents core Rule 6(e) material. *See Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 211 (D.C. Cir. 2015) (holding that Rule 6(e) shields the dates on which the grand jury convened because that information "would tend to reveal the complexity and 'scope, focus and direction of the grand jury investigation[]'" (citation omitted)); *Lopez*, 393 F.3d at 1349 (holding that Rule 6(e) shields the dates on which the grand jury issued subpoenas because that information "inherently tends to 'reveal' the 'direction of the investigation'" (citation omitted)).

Judicial Watch's contentions that NARA's supporting declarations are "too vague" and "fail to give a reviewing court a reasonable basis to evaluate NARA's asserted 6(e) privilege," Br. 14-15, are not supported by this Court's case law. Indeed, this Court has upheld agency decisions to withhold materials under Rule 6(e) based on considerably less detailed explanations than the one NARA has provided here. In *Hodge*, for instance, this Court upheld the FBI's decision to withhold certain

15

investigative records based entirely on the agency's one-sentence assertion "that the relevant material 'documents the identities of individuals who were either the recipients of a Federal Grand Jury Subpoena and/or testified before a Federal Grand Jury.'" 703 F.3d at 580 (quoting agency declaration). Similarly, in *Fund for Constitutional Government*, this Court found sufficient the agency's general assertions that the withheld material "nam[ed] or identif[ied] grand jury witnesses; quot[ed] or summariz[ed] grand jury testimony; evaluat[ed] testimony; discuss[ed] the scope, focus and direction of the grand jury investigations; and identif[ied] documents considered by the grand jury and conclusions reached as a result of the grand jury investigations." 656 F.2d at 870 (citing agency affidavit).

NARA's justifications for its withholding decision in this case are much more thorough than the justifications offered by the agencies in *Hodge* and *Fund for Constitutional Government*. NARA's declarations (and accompanying index) describe the drafts of the indictment in as much detail as possible without disclosing any protected information. JA 28-29, 35. Moreover, they highlight the specific confidential aspects of the proceedings that the drafts would likely reveal, including witness names and identities, evidence and testimony, and investigative strategy. JA 28-29, 372-73. This information is more than sufficient to enable meaningful review of NARA's withholding decision.

16

**B.    Publicly available information about the Whitewater investigation does not mandate disclosure of the indictment drafts, which have never previously been disclosed.**

Judicial Watch's principal argument for disregarding Rule 6(e) in this case is that "so much grand jury and non-grand jury material from the independent counsel's investigation has been made public that there is no reason for any continued secrecy or any secrecy left to protect." Br. 22-23.  However, none of the publicly available information Judicial Watch has identified here justifies disclosure of the indictment drafts.

**1.**   This Court has recognized the "general rule that 'Rule 6(e) does not create a type of secrecy which is waived once public disclosure occurs.'" *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (citation omitted).  Thus, "when the media reports information alleged to be grand jury material, 'the government is obligated to stand silent' and not confirm the information, whether it is accurate or not." *Id.* (citation omitted).  Only when grand jury information has become "sufficiently widely known" that its "secrecy no longer exists" does the information lose "its character as Rule 6(e) material." *Id.*

In challenging an agency's withholding decision based on "prior disclosures," the plaintiff "bears the burden of pointing to 'specific information in the public domain that appears to duplicate [the information] being withheld.'" *Electronic Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 933 (D.C. Cir. 2012) (citation omitted); *see also Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (explaining that the plaintiff,

17

rather than the government, bears the initial burden in this context "because the task of proving the negative—that information has not been revealed—might require the government to undertake an exhaustive, potentially limitless search"). "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (emphasis in original).

Here, Judicial Watch relies principally on two documents to support its "prior disclosure" argument: the 2001 independent-counsel report and the 1998 evidence memo, both of which identify and quote testimony from grand jury witnesses. Br. 14-15. Neither of these documents provides a basis for disregarding Rule 6(e) in this case.[6] If anything, the two documents reaffirm that disclosing the drafts of the proposed indictment would tend to reveal details about the grand jury's investigation that have not previously been made public.

For instance, while the report and the memo both refer to certain written evidence collected by the independent counsel, neither document discloses how much of this evidence was actually presented to the grand jury. Indeed, Judicial Watch itself acknowledges that it is "not possible to discern from the [memo] or the report whether this evidence was ever presented to or considered by the grand jury." Br. 15 n.4. Similarly, while the report and the memo both discuss excerpts of grand jury

---

[6] Notably, the 1998 evidence memo itself contains dozens of Rule 6(e) redactions. *See* JA 158-368.

18

testimony, neither document discloses the full witness list or describes each witness's testimony in any comprehensive way. *See* Br. 15 (acknowledging that the 1998 memo does not provide "an exhaustive count" of witnesses). In short, both documents preserve grand jury secrecy by leaving significant gaps in the public record of the grand jury's investigation.

Disclosure of the indictment drafts would likely fill in some of those gaps. As NARA explained in its supplemental declaration, an indictment is "crafted for the specific purpose of persuading a grand jury to formally charge one or more individuals." JA 372. A draft indictment therefore offers greater insight into the grand jury's investigative and deliberative process than an independent-counsel report (prepared for the public) or evidence memo (prepared for prosecutors). Here, NARA reviewed both the 2001 independent-counsel report and the 1998 evidence memo, *see* JA 371, and found that they "contrast with the drafts of the indictment . . . in both purpose and form." JA 372. The agency noted, in particular, that the report and the memo both discuss a broader universe of evidence than the indictment drafts, which represent the "distillation of all the evidence gathered and presented to the grand jury." JA 372 (emphasis added). Thus, even if the indictment drafts cite some of the same evidence as the report or the memo, their disclosure would still reveal new information about the grand jury proceedings by highlighting the specific evidence that the grand jury considered most important. *See In re Sealed Case No. 98-3077*, 151

19

F.3d 1059, 1071 (D.C. Cir. 1998) (recognizing that "[e]ven the fact that the 'leaked' material was not relevant to the investigation could itself be quite revealing").

NARA's decision to withhold the drafts (notwithstanding the prior disclosures cited by Judicial Watch) appears consistent with the Office of the Independent Counsel's own view that the documents contain secret grand jury information. As noted above, the Office declined to release any drafts of the indictment when it issued its final reports on the Whitewater investigation. *See* JA 372. Moreover, when the Office transferred its records from the Whitewater investigation to NARA in 2004, it marked the boxes containing the drafts with a note stating that they contain Rule 6(e) material. *See* JA 27. The Office's decision to mark the boxes in this way suggests that it understood the government to be bound by Rule 6(e) at that time—a full three years after it issued its report on the investigation into Mrs. Clinton.

The Office's decision to designate the indictment drafts as Rule 6(e) material casts doubt on Judicial Watch's suggestion that this Court previously approved the release of any sensitive information contained in the indictment drafts when it authorized the publication of the 2001 report. That authorization did not apply to the indictment drafts at issue here, which were not included in the report. Furthermore, as explained above, to the extent that there is any overlap between the 2001 report and the indictment drafts, disclosure of the drafts would still reveal information about the direction of the grand jury's investigation that was not previously disclosed in the report.

20

**2.**   Judicial Watch's reliance on *In re Sealed Case*, 192 F.3d 995 (D.C. Cir. 1999), is misplaced.  The issue in *In re Sealed Case* was whether certain attorneys in the Office of the Independent Counsel had committed a *per se* violation of Rule 6(e) by publicly disclosing that they wished to pursue an indictment against President Clinton for perjury.  *Id.* at 1001.  After an article appeared in the *New York Times* describing the attorneys' desire to pursue such an indictment, the district court ordered the Office to show cause why its attorneys should not be held in contempt for violating Rule 6(e).  *Id.* at 997-98.  In vacating the show-cause order, this Court held that prosecutors do not run afoul of Rule 6(e) merely by expressing a general interest in bringing charges against someone.  The Court reasoned that such "bare statements" of interest, without more, "do not implicate the grand jury" because they may or may not be based on information presented to the grand jury and may or may not reflect an actual decision to bring charges.  *Id.* at 1004.

The logic of *In re Sealed Case* is inapposite here.  The question in this case is not whether Rule 6(e) permits NARA to disclose the fact that some attorneys in the Office of the Independent Counsel harbored a general desire to bring charges against Mrs. Clinton.  Rather, the question is whether Rule 6(e) permits NARA to disclose *actual drafts* of an indictment identifying *actual evidence and testimony* presented to a grand jury.  Unlike the statements at issue in *In re Sealed Case*—which, this Court observed, "may not even be bas[ed] . . . on information presented to the grand jury," 192 F.3d at

21

1004—the indictment drafts at issue here arise directly out of the grand jury's investigation.

**3.**    Finally, contrary to Judicial Watch's characterization (Br. 18), NARA's supporting declarations are entirely consistent with one another.  The first declaration identifies the specific categories of grand jury information that the indictment drafts disclose.  *See* JA 29 (referring to "grand jury testimony," "records subpoenaed during the grand jury process," and "names and identifying information of individuals subpoenaed").  The second declaration explains, in more general terms, how the indictment drafts differ from the 2001 independent-counsel report and the 1998 evidence memo.  *See* JA 371-72.  In outlining the differences between those documents, NARA's second declaration explains that the drafts of the indictment— unlike the report or the memo—"represent a compilation and distillation of all of the evidence gathered and presented to the grand jury up until the time the draft indictments were prepared."  JA 372.  Nothing in that description of the drafts—nor any other statement in the second declaration—conflicts with NARA's earlier declaration.

## II.    NARA properly withheld the drafts of the indictment under Exemptions 6 and 7(C).

Even if the drafts of the indictment were not protected by Rule 6(e), NARA would still be justified in withholding them independently under Exemptions 6 and 7(C).  The "core purpose" of FOIA is to require agencies to disclose records that aid

the public's "understanding of the operations or activities of the government" and inform citizens about "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989) (emphasis omitted). "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.* at 773.

Congress therefore tempered FOIA's general policy of public disclosure by enacting Exemptions 6 and 7(C) to protect individual privacy. Although both exemptions require agencies to balance individual privacy interests against the public's interest in disclosure, Exemption 7(C) provides somewhat broader privacy protections than Exemption 6. *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 496 n.6 (1994). This brief therefore focuses on the balance of interests under Exemption 7(C), following this Court's approach in similar cases. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (declining to perform a separate balancing analysis under Exemption 6 when "all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").

### A. Disclosure of the drafts would constitute an unwarranted invasion of Mrs. Clinton's personal privacy.

Exemption 7(C) applies to law-enforcement records whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether the disclosure of a particular

document might constitute an "unwarranted invasion of privacy," a court must balance the individual privacy interests at stake against the public's interest in accessing the document. *NARA v. Favish*, 541 U.S. 157, 171 (2004).

In performing that balancing, this Court has recognized that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[W]here individuals have been investigated but not charged with a crime," the release of investigatory files describing their alleged wrongdoing "represents a severe intrusion on the privacy interests of the individuals in question and should yield only where exceptional interests militate in favor of disclosure." *Fund for Constitutional Gov't*, 656 F.2d at 866. Indeed, even individuals who are widely known to have been under investigation retain a "distinct privacy interest in the *contents* of the[ir] investigative files." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) (*CREW I*); *see also ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 933 (D.C. Cir. 2014) ("Although the fact that such defendants were accused of criminal conduct may remain a matter of public record, they are entitled to move on with their lives without having the public reminded of their alleged but never proven transgressions.").

In this case, Mrs. Clinton retains just such an interest in avoiding disclosure of the indictment drafts. Although she may not be able to avoid the public stigma of having been a target of the Whitewater investigation, she still retains a "substantial privacy interest . . . in controlling information concerning criminal charges for which

24

[she was] not convicted." *ACLU*, 750 F.3d at 929. That interest includes her ability to avoid further dissemination of the twenty-year-old allegations against her, which additional disclosures would likely exacerbate. *See People for the Ethical Treatment of Animals v. National Institutes of Health*, 745 F.3d 535, 542 (D.C. Cir. 2014) (recognizing that university researchers who were known to be the subjects of a pending investigation still retained an interest in preventing further dissemination of that information); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, No. 16-5138, 2017 WL 1422487, at *5 (D.C. Cir. Apr. 21, 2017) (*CREW II*), (recognizing that "[e]ven after an individual has been convicted, . . . the individual retains a privacy interest in the facts of his conviction.").

The fact that Mrs. Clinton was a well-known public official does not extinguish her privacy interests here. *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981) ("[G]overnment officials do not surrender all rights to personal privacy when they accept a public appointment."). Nor does the fact that she was the target of such a high-profile investigation. As this Court recognized in *CREW I*, public officials retain a privacy interest in avoiding disclosure of their investigative files, even when they are widely known to be under investigation. *See* 746 F.3d at 1091-92. In *CREW I*, a nonprofit organization had requested certain investigative files from the Justice Department and the FBI concerning a corruption investigation targeting House Majority Leader Tom DeLay. *Id.* at 1089-91. Although the investigation had been the subject of widespread reporting and DeLay himself had publicly

acknowledged that he had been investigated, this Court held that DeLay retained a privacy interest in "the particulars of the investigation," including the "contents of the investigative files." *Id.* at 1092. The same reasoning applies here.

### B. Mrs. Clinton's privacy interests outweigh the public interests in disclosure that Judicial Watch has identified.

The "only relevant public interest in the FOIA balancing analysis" under Exemption 7(C) is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *FLRA*, 510 U.S. at 497. "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993).

Judicial Watch contends that the drafts of the indictment "will shed light on both what Clinton, in her capacity as a high level public official, and [the Office of the Independent Counsel] were 'up to.'" Br. 26. Neither of these interests, however, is sufficient to justify disclosure in this case.

As an initial matter, Judicial Watch's asserted interest in learning what Mrs. Clinton is "up to" is not a cognizable public interest under FOIA. This Court has repeatedly held that FOIA's purpose is to shed light on an agency's performance of its statutory duties—not to gather information about the individuals the agency is investigating. In *CREW I*, for instance, the Court made clear that "the relevant public

interest [was] *not* to find out what DeLay himself was 'up to' but rather how the FBI and the DOJ carried out their respective duties to investigate and prosecute criminal conduct." 746 F.3d at 1093 (emphasis in original). Similarly, in *Quinon v. FBI*, 86 F.3d 1222 (D.C. Cir. 1996), the Court rejected the plaintiff's effort to obtain certain FBI records concerning a federal judge in order to determine whether the judge had engaged in misconduct. *See id.* at 1231 ("[T]he relevant question in determining whether there is a public interest in disclosure is whether the FBI, not Chief Judge Tjoflat, has engaged in wrongdoing.").

While Judicial Watch has a slightly stronger interest in learning what the Office of the Independent Counsel was "up to" during its Whitewater investigation, that interest still does not justify disclosure here. As Judicial Watch itself points out, the Whitewater investigation was the subject of considerable public interest, and the Office's conduct during that investigation was thoroughly documented in numerous publicly available sources. Given the widespread availability of those sources—which do not substantially undermine grand jury secrecy or intrude upon personal privacy interests—disclosing the indictment drafts at issue here would only marginally advance the public's interest in learning more about the Office. *See Fund for Constitutional Gov't*, 656 F.2d at 866 (holding that the "general public curiosity" in learning more about the Watergate scandal was outweighed by the privacy interests of individuals investigated in connection with that scandal).

27

Indeed, Judicial Watch has not offered any reason to believe that the Office engaged in misconduct, nor any reason to think that the indictment drafts would reveal such impropriety. *See CREW II*, 2017 WL 1422487, at *6 (noting that a requester seeking information about how an investigation was performed has the "burden to 'show the information is likely to advance' the public interest in learning" about the investigation (citing *Favish*, 541 U.S. at 172 )). Accordingly, in light of Judicial Watch's failure to identify any public interest that outweighs Mrs. Clinton's privacy interests, the Court should uphold NARA's decision to withhold the indictment drafts under Exemption 7(C).

## III. NARA properly concluded that no portions of the indictment drafts could be reasonably segregated.

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). However, "documents may be withheld in their entirety when nonexempt portions 'are inextricably intertwined with exempt portions.'" *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citation omitted).

In this case, NARA withheld the indictment drafts in full because "they are inextricably intertwined with the grand jury process and are not subject to segregation." JA 372. As previously explained, indictments are prepared for the "specific purpose of persuading a grand jury" to bring charges against someone and,

28

as such, represent the culmination of the grand jury's investigative and deliberative process. JA 372. Because of the central role indictments play in the grand jury process, disclosing even a redacted draft of an indictment would likely reveal confidential information by highlighting the specific witnesses, evidence, or prosecution strategies that had the greatest impact on the grand jury's investigation. It was therefore reasonable for NARA to conclude that "draft indictments that do not result in any further prosecutorial action" are not susceptible to a segregability analysis and must be withheld in full. JA 373.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

JEANNETTE WISE
JEFFREY LANDOU
   *Office of General Counsel*
   *National Archives and Records*
     *Administration*
   *8601 Adelphi Road, Ste. 3110*
   *College Park, MD 20740*
   *(301) 837-1899*

CHAD A. READLER
   *Acting Assistant Attorney General*

CHANNING D. PHILLIPS
   *United States Attorney*

DOUGLAS N. LETTER
   *s/ Nicolas Y. Riley*
   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
NICOLAS Y. RILEY
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7231*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, D.C. 20530*
   *(202) 514-4814*
   *nicolas.y.riley@usdoj.gov*

APRIL 2017

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared in 14-point Garamond font and complies with the requirements of Federal Rule of Appellate Procedure 32(a). This brief contains 7,118 words.


*s/ Nicolas Y. Riley*
NICOLAS Y. RILEY

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Nicolas Y. Riley*
NICOLAS Y. RILEY

**ADDENDUM**

## TABLE OF CONTENTS

5 U.S.C. § 552(b) ..................................................................................A1

28 U.S.C. § 594(k) ...............................................................................A2

Federal Rule of Criminal Procedure 6(e) ..........................................A4

**5 U.S.C. § 552(b) – Exemptions 3, 6, and 7(C) of FOIA.**

**(b)** This section does not apply to matters that are--

. . .

    **(3)** specifically exempted from disclosure by statute (other than section 552b of this title), if that statute--

        **(A) (i)** requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

        **(ii)** establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

        **(B)** if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

    . . .

    **(6)** personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

    **(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . ;

. . .

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

A1

**28 U.S.C. § 594(k) – Custody of records of Independent Counsel.**

**(k)** Custody of records of an independent counsel.--

> **(1)** Transfer of records.--Upon termination of the office of an independent counsel, that independent counsel shall transfer to the Archivist of the United States all records which have been created or received by that office. Before this transfer, the independent counsel shall clearly identify which of these records are subject to rule 6(e) of the Federal Rules of Criminal Procedure as grand jury materials and which of these records have been classified as national security information. Any records which were compiled by an independent counsel and, upon termination of the independent counsel's office, were stored with the division of the court or elsewhere before the enactment of the Independent Counsel Reauthorization Act of 1987, shall also be transferred to the Archivist of the United States by the division of the court or the person in possession of such records.

> **(2)** Maintenance, use, and disposal of records.--Records transferred to the Archivist under this chapter shall be maintained, used, and disposed of in accordance with chapters 21, 29, and 33 of title 44.

> **(3)** Access to records.--

>> **(A)** In general.--Subject to paragraph (4), access to the records transferred to the Archivist under this chapter shall be governed by section 552 of title 5.

>> **(B)** Access by Department of Justice.--The Archivist shall, upon written application by the Attorney General, disclose any such records to the Department of Justice for purposes of an ongoing law enforcement investigation or court proceeding, except that, in the case of grand jury materials, such records shall be so disclosed only by order of the court of jurisdiction under rule 6(e) of the Federal Rules of Criminal Procedure.

>> **(C)** Exception.--Notwithstanding any restriction on access imposed by law, the Archivist and persons employed by the National Archives and Records Administration who are engaged in the performance of normal archival work shall be permitted access to the records transferred to the Archivist under this chapter.

> **(4)** Records provided by Congress.--Records of an investigation conducted by a committee of the House of Representatives or the Senate which are

provided to an independent counsel to assist in an investigation or prosecution conducted by that independent counsel--

   **(A)** shall be maintained as a separate body of records within the records of the independent counsel; and

   **(B)** shall, after the records have been transferred to the Archivist under this chapter, be made available, except as provided in paragraph (3)(B) and (C), in accordance with the rules governing release of the records of the House of Congress that provided the records to the independent counsel.

   Subparagraph (B) shall not apply to those records which have been surrendered pursuant to grand jury or court proceedings.

A3

**Federal Rule of Criminal Procedure 6(e) – The Grand Jury.**

**(e)** Recording and Disclosing the Proceedings.

> **(1)** Recording the Proceedings. Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device. But the validity of a prosecution is not affected by the unintentional failure to make a recording. Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes.

> **(2)** Secrecy.

>> **(A)** No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

>> **(B)** Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

>>> **(i)** a grand juror;

>>> **(ii)** an interpreter;

>>> **(iii)** a court reporter;

>>> **(iv)** an operator of a recording device;

>>> **(v)** a person who transcribes recorded testimony;

>>> **(vi)** an attorney for the government; or

>>> **(vii)** a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

> **(3)** Exceptions.

>> **(A)** Disclosure of a grand-jury matter--other than the grand jury's deliberations or any grand juror's vote--may be made to:

>>> **(i)** an attorney for the government for use in performing that attorney's duty;

>>> **(ii)** any government personnel--including those of a state, state subdivision, Indian tribe, or foreign government--that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; or

>>> **(iii)** a person authorized by 18 U.S.C. § 3322.

**(B)** A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law. An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

**(C)** An attorney for the government may disclose any grand-jury matter to another federal grand jury.

**(D)** An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counterintelligence (as defined in 50 U.S.C. § 3003), or foreign intelligence information (as defined in Rule 6(e)(3)(D)(iii)) to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties. An attorney for the government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

   **(i)** Any official who receives information under Rule 6(e)(3)(D) may use the information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information. Any state, state subdivision, Indian tribal, or foreign government official who receives information under Rule 6(e)(3)(D) may use the information only in a manner consistent with any guidelines issued by the Attorney General and the Director of National Intelligence.

   **(ii)** Within a reasonable time after disclosure is made under Rule 6(e)(3)(D), an attorney for the government must file, under seal, a notice with the court in the district where the grand jury convened stating that such information was disclosed and

A5

the departments, agencies, or entities to which the disclosure was made.

**(iii)** As used in Rule 6(e)(3)(D), the term "foreign intelligence information" means:

> **(a)** information, whether or not it concerns a United States person, that relates to the ability of the United States to protect against--

> • actual or potential attack or other grave hostile acts of a foreign power or its agent;

> • sabotage or international terrorism by a foreign power or its agent; or

> • clandestine intelligence activities by an intelligence service or network of a foreign power or by its agent; or

> **(b)** information, whether or not it concerns a United States person, with respect to a foreign power or foreign territory that relates to--

> • the national defense or the security of the United States; or

> • the conduct of the foreign affairs of the United States.

**(E)** The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter:

**(i)** preliminarily to or in connection with a judicial proceeding;

**(ii)** at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

**(iii)** at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

**(iv)** at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

    **(v)** at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

**(F)** A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened. Unless the hearing is ex parte--as it may be when the government is the petitioner--the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:

    **(i)** an attorney for the government;

    **(ii)** the parties to the judicial proceeding; and

    **(iii)** any other person whom the court may designate.

**(G)** If the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper. If the petitioned court decides to transfer, it must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand-jury secrecy. The transferee court must afford those persons identified in Rule 6(e)(3)(F) a reasonable opportunity to appear and be heard.

**(4)** Sealed Indictment. The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.

**(5)** Closed Hearing. Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury.

**(6)** Sealed Records. Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.

**(7)** Contempt. A knowing violation of Rule 6, or of any guidelines jointly issued by the Attorney General and the Director of National Intelligence under Rule 6, may be punished as a contempt of court.