[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

**No. 16-5366**
_____

**JUDICIAL WATCH, INC.**

**Plaintiff-Appellant,**

**v.**

**NATIONAL ARCHIVES AND RECORDS ADMINISTRATION**

**Defendant-Appellee.**
_____

**ON APPEAL FROM THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
_____

**REPLY BRIEF OF APPELLANT JUDICIAL WATCH, INC.**
_____

Paul J. Orfanedes
Lauren M. Burke
**JUDICIAL WATCH, INC.**
425 Third Street, S.W., Suite 800
Washington, DC 20024
(202) 646-5172
*Counsel for Plaintiff-Appellant*

Dated: May 24, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

SUMMARY OF THE ARGUMENT ......................................................1

ARGUMENT ...................................................................................2

CONCLUSION ..............................................................................11

CERTIFICATE OF COMPLIANCE.....................................................12

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE**

*Boehm v. Fed. Bureau of Investigation,*
     *948 F.Supp.2d 9 (D.D.C. 2013)* .......................................................................3

*Citizens for Responsibility and Ethics in Washington v. United States*
     *Dep't of Justice*, 746 F.3d 1082 (D.C. Cir. 2014) ..........................................7

*Electronic Privacy Info. Ctr. v. Central Intelligence Agency,*
     *678 F.3d 926 (D.C. Cir. 2012)* .........................................................................4

*Fund for Constitutional Gov't v. National Archives & Records Serv.,*
     *656 F.2d 856 (D.C. Cir. 1981)* .........................................................................7

*Hodge v. Fed. Bureau of Investigation,*
     *703 F.3d 575 (D.C. Cir. 2012)* .........................................................................4

*\*Senate of Puerto Rico v. United States Dep't of Justice,*
     *823 F.2d 574 (D.C. Cir. 1987)* .........................................................................3

*United States v. Hitt,*
     *249 F.3d 1010 (D.C. Cir. 2001)* .......................................................................5

## Rules and Statutes

Fed. R. Crim. P. 7(c)(1) ..........................................................................................5

\* Authorities upon which Plaintiff-Appellant chiefly relies are marked with asterisks.

## SUMMARY OF THE ARGUMENT

NARA failed to prove it met its burden of showing that the draft indictments are protected from disclosure under FOIA Exemptions 3, 6, and 7(C).  NARA does not adequately address the inconsistencies in its contradictory declarations, which initially claimed that the drafts identify "actual evidence and testimony," but later asserted that they merely "reflect a compilation and distillation of all the evidence."  In addition, NARA's mischaracterization of the mountain of grand jury material already made pubic as "affirming" its justification for withholding the drafts is wholly unsupported and fails to show how the drafts contain any grand jury material that has not already been made public and cannot be redacted.  The cases NARA cites also are readily distinguishable and do not address how Rule 6(e) should be applied when vast quantities of grand jury material have been released.

Finally, NARA's attempt to minimize the public's interest in what the government was "up to," *i.e.* what Mrs. Clinton was "up to" during her years as First Lady and a senior presidential advisor, is mistaken.  Disclosure of the drafts will add to the public record and allow a more thorough assessment of the effectiveness and wisdom of appointing special prosecutors to investigate high level public officials.

The decision of the District Court should be reversed and the case remanded with instructions that the drafts be produced in their entirety, except for any "actual evidence and testimony" presented to the grand jury that NARA proves has not been made public.

## **ARGUMENT**

Appellant Judicial Watch, Inc. ("Judicial Watch") submits the following points in reply to the Brief for Appellee, National Archives and Records Administration ("NARA"):

1.      Citing its first declaration, NARA insists that the drafts "quote grand jury testimony," "identify[] specific records subpoenaed during the grand jury process," and "reflect[] names and identifying information of individuals subpoenaed – or intended to be subpoenaed – to testify before the grand jury." Brief for Appellee at 14; *see also id.* at 21 (asserting that the drafts identify "actual evidence and testimony").  While Judicial Watch pointed out that these assertions are inconsistent with NARA's second declaration, which only claimed that drafts "reflect a compilation and distillation of all the evidence" (*id.*), if the first declaration is correct, then NARA fails to demonstrate why these items could not be redacted from the drafts and the remainder produced to Judicial Watch.  Quotes, references to specific, subpoenaed records, and the names and identifying

information about specific persons – to the extent they have not been made public already – can be redacted easily.

NARA fails to convincingly address this fundamental inconsistency. If the drafts contain both actual evidence and actual testimony and also reflect a compilation and distillation of the evidence presented to the grand jury, then why didn't NARA say so in its first declaration? It was only when Judicial Watch identified the enormous amount of grand jury material already made public in the Independent Counsel's Final Report ("Final Report") and Summary of Evidence Memorandum ("Evidence Memo") and challenged NARA's failure to redact any non-public evidence and testimony and produce the remainder that NARA came up with its "compilation and distillation" claim. It obviously is more difficult to withhold the drafts in their entirety if particular pieces of evidence or testimony can be identified and a determination made whether the evidence or testimony has already been made public. It is still not clear from NARA's declarations that any such analysis was undertaken after Judicial Watch asked for the drafts. What is clear is that NARA only made its "compilation and distillation claim" after Judicial Watch effectively rebutted its "actual evidence and testimony claim."

2.     NARA's attempt to diminish the mountain of grand jury material already made public misses its mark. NARA claims that, "[i]f anything, the two documents [identified by Judicial Watch] reaffirm that disclosing the drafts . . .

would tend to reveal details about the grand jury's investigation that have not previously been made public." Brief for Appellee at 18. Nothing could be further from the truth. The amount of grand jury material already made public in the Final Report and Evidence Memo is truly extraordinary. The two documents do not "reaffirm" that disclosing the drafts would reveal non-public information about the grand jury's investigation. Rather, they confirm that, not only has a tremendous amount of grand jury material already been made public, but NARA's sparse declarations fail to satisfy its burden of proving that the drafts contain any grand jury material that has not already been made public and cannot be redacted.

     3.     NARA's reference to *Boehm v. Fed. Bureau of Investigation*, 948 F.Supp.2d 9 (D.D.C. 2013) is inapposite (perhaps that is why it is cited in a passing footnote rather than the text of NARA's argument). Brief for Appellee at 14. In *Boehm*, the Court stated "[t]he problem here…is that plaintiff has not supplied the Court with any evidence that the information being withheld was widely publicized or even disclosed to the public at all. Thus, there is no basis to conclude that the evidence withheld…has become such a matter of public record that Exemption 3 should not apply." *Boehm*, 948 F. Supp.2d at 27. Additionally, the Court found that the defendant had described the grand jury material sufficiently. *Id*. The same cannot be said here. NARA's declaration says little more than that "[a]ll the responsive records are directly related to the Independent Counsel's consideration

of presenting an indictment to a grand jury." JA at 29. The fact that material is "related" to a grand jury investigation does not automatically exempt it from disclosure. *See Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574 (holding defendants did not supply "information a court must have in order to intelligently make [the] judgment" that information would "compromise[] the secrecy of a grand jury's deliberations.").

NARA's reference to *Electronic Privacy Info. Ctr. v. Central Intelligence Agency*, 678 F.3d 926 (D.C. Cir. 2012) ("*EPIC*") also is misplaced, as is its citation of *Hodge v. Fed. Bureau of Investigation*, 703 F.3d 575 (D.C. Cir. 2012). *EPIC* was a "Glomar" case, not a grand jury material case. There is no dispute here that the drafts exist. In *Hodge*, the death row inmate seeking records about one of his murder accomplices "d[id] not contest the accuracy" of the FBI's grand jury claim or make any effort to show that the information requested had already been made public. *Hodge*, 703 F.3d at 580. NARA's other cases are readily distinguishable as well.

4.    Also mistaken is NARA's claim that Judicial Watch's reliance on the enormous amounts of material made public in the Final Report and Evidence Memo somehow proves NARA's withholdings are proper.    Brief for Appellee at 18. The opposite is the case. The material already made public only highlights the tremendous amount of investigative material – both grand jury and non-grand jury

– that has already been disclosed.  Given that Judicial Watch seeks only a limited, identifiable set of records – fourteen in total – NARA should have gone through each record individually, line by line, and compared it to the Final Report and Evidence Memo to determine whether any grand jury material the record may contain had previously been made public.  Any such material could then have been redacted and the remainder produced to Judicial Watch.  It makes no difference, as NARA claims (*id.* at 18, n.6), that the Evidence Memo may contain redactions.  If grand jury material was redacted from the Evidence Memo and not previously made public, NARA may choose to redact it.  The fact that NARA reviewed the 206-page Evidence Memo to determine whether it contained grand jury material and whether that material had already been made public confirms that NARA is readily capable of such an analysis and should have performed such an analysis with respect to the fourteen drafts.  Under the circumstances, NARA's broad brush claim that releasing even portions of the records will release non-public grand jury material does not satisfy its burden.

  5. NARA's claim about draft indictments offering greater insight into a grand jury's investigation than an independent counsel report because indictments are "crafted for the specific purpose of persuading a grand jury" to charge an individual is just not so.  Brief for Appellee at 19.  The premise of the claim is incorrect.  Indictments are not crafted to persuade grand juries to indict.  They are

crafted to give defendants legally sufficient notice of the charges against them. Rule 7 of the Federal Rules of Criminal Procedure and federal case law makes this abundantly clear, as Judicial Watch demonstrated in its opening brief. Brief of Appellant at 17 (*citing* Fed.R.Crim. P. 7(c)(1); *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). NARA makes no attempt to rebut this demonstration. It cannot. Rule 7 and numerous federal cases directly refute NARA's argument. A draft indictment offers insight into a prosecutor's actions, not a grand jury's investigation or evidence a grand jury considers to be important.

6.     NARA's claim that withholding the drafts "appears" consistent with the Office of the Independent Counsel's view of them is pure speculation. Brief for Appellee at 20. NARA offers no evidence about why the independent counsel's office might have put the drafts in a box with a note referencing Rule 6(e). *Id.* NARA makes no claim that the drafts were reviewed at the time by a person knowledgeable about the investigation and that a determination never to release the drafts was made. NARA also makes no claim that, when the drafts were put in the box, they were compared to the already-published Final Report to determine if they contained any previously undisclosed grand jury material. NARA also ignores the subsequent disclosure of the Evidence Memo and the huge quantities of grand jury material released at that time. It simply is not possible to read anything meaningful into the note.

7.      NARA's claim that Mrs. Clinton retains a "substantial" privacy interest in the draft indictments likewise fails to take into account the huge amount of grand jury material already made public in the Final Report and Evidence Memo.  Brief for Appellee at 24-25.  NARA cannot claim that the public does not already know that Mrs. Clinton was the subject of a criminal investigation or that draft indictments naming her as a defendant were prepared.  These facts are already in the public domain.  *See Fund for Constitutional Gov't v. Nat'l Archives and Records Admin.*, 656 F.2d 856, 864 (1981) ("The degree of intrusion occasioned by disclosure is necessarily dependent upon the character of the information in question.").  Nor is Mrs. Clinton similarly situated to former U.S. Congressman Tom Delay in *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082 (D.C. Cir. 2014) ("*CREW*").  "Particulars" of the Independent Counsel's investigation of Mrs. Clinton, including the "contents of investigative files," were made public with the publication of the Final Report and the Evidence Memo.  *Cf.* Brief for Appellee at 26.  The Court's reasoning in *CREW* does not apply.  *Id.*  Other than bare, unsubstantiated, and generic assertions of privacy, NARA fails to show that Mrs. Clinton continues to have any meaningful privacy interest in the draft indictments.  Once again, NARA has failed to meet its burden of proof.

8

8.    Judicial Watch disputes NARA's claim that there is no relevant public interest in learning what Mrs. Clinton was "up to" when she served as First Lady and a senior presidential advisor.  Mrs. Clinton then went on to occupy two other, high level government positions, U.S. Senator and U.S. Secretary of State.  She later became the 2016 democratic nominee for President of the United States. Judicial Watch is aware of the Court's cases holding that, when privacy interests are balanced against the public interest, the public interest "side" of the scale generally focuses on the conduct of government agencies.  This case is different. Mrs. Clinton cannot be compared to a private citizen, an ordinary government employee, or even Congressman Delay.   She held numerous high level government positions and sought the nation's highest office.  As a result, what the government was "up to" and what Mrs. Clinton was "up to" cannot be so neatly separated.  The public interest in knowing what the government was "up to" undoubtedly includes knowing what Mrs. Clinton was "up to" during her years in the White House.  Given the nature of the records – draft indictments of a sitting First Lady and senior presidential advisor for alleged false statements to federal investigators and withholding evidence – the records also may help the public to evaluate what the government was "up to" during Mrs. Clinton's time in the U.S. Senate and at the State Department.  Allegations that a high-level official made false statements to federal investigators and withheld evidence bear on the

9

official's honesty, integrity, and trustworthiness and therefore bear on public trust and confidence in government.

9.     NARA acknowledges that the Independent Counsel's investigation was the subject of considerable public interest.  Brief for Appellee at 27.  NARA is wrong, however, when it asserts that the amount of information about the Independent Counsel's investigation already made public somehow diminishes the importance of making the draft indictments public.  The public record of the Independent Counsel's investigation obviously is not complete.  Disclosing the drafts will add to the public record, affording scholars, researchers, journalists, and the general public greater access to information about the investigation.  It will allow for a more thorough, informed assessment of not only this particular Independent Counsel, but also the effectiveness and wisdom of appointing special prosecutors to investigate high level public officials generally.  NARA's claim that disclosure will not advance the public interest is plainly wrong.

## CONCLUSION

For the reasons set forth in Judicial Watch's opening brief and the additional reasons set forth above, the District Court should be reversed, and the case should be remanded for further proceedings.

Dated: May 24, 2017                          Respectfully submitted,

                                             JUDICIAL WATCH, INC.

                                             /s/ *Paul J. Orfanedes*
                                             Paul J. Orfanedes
                                             /s/ *Lauren M. Burke*
                                             Lauren M. Burke
                                             425 Third Street, S.W., Suite 800
                                             Washington, DC  20024
                                             Tel:    (202) 646-5172
                                             Email: porfanedes@judicialwatch.org
                                                      lburke@judicialwatch.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume

limitations of Fed. R. App. P. 32(a)(7).  The brief, excluding exempted portions,

contains 2700 words (using Microsoft Word 2010), and has been prepared in a

proportional Times New Roman, 14-point font.

/s/ Lauren M. Burke

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2017, I filed via the CM/ECF system the foregoing **REPLY BRIEF OF APPELLANT JUDICIAL WATCH, INC.** with the Clerk of the Court.  Participants in the case are registered CM/ECF users and service will be accomplished by the Appellate CM/ECF system.

I also certify that I caused eight copies to be delivered to the Clerk of Court via hand delivery.

*/s/ Lauren M. Burke*